In the Matter of the Application of CORPORATE EMPLOYMENT SERVICE, INC., Petitioner, for an Order against PAUL MOSS, as Commissioner of Licenses of the City of New York, Respondent.

First Department, November 28, 1941.

*William E. Vogel* of counsel [*J. Frederic Taylor* with him on the brief; *Burke & Burke*, attorneys], for the petitioner.

*Francis J. Bloustein* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondent.

DORE, J. The issue herein is the interpretation of subdivision 1 of section 185 of the General Business Law providing for gross fees chargeable by licensed employment agencies not to exceed five per cent where " the period of employment is for at least one year, and at a yearly salary."

The commissioner of licenses of the city of New York after hearings revoked the license of petitioner Corporate Employment Service, Inc., to conduct its business as an employment agency on the ground that petitioner had violated the provisions of the General Business Law (§ 185) by charging certain employees for whom it had obtained positions a gross fee of three per cent when the period of employment was not for at least one year and was not at a yearly salary. Petitioner, contending that the fees were in accord with the provisions of the statute, seeks a review of the commissioner's determination under article 78 of the Civil Practice Act. Pending our determination, an order staying enforcement of the revocation was consented to and petitioner is now operating its agency.

General Business Law, section 185, subdivision 1, after providing for the fees chargeable to applicants for positions as domestics, unskilled workers, laborers and other classes of employment not here relevant, provides, so far as relevant, that the gross fees charged by employment agencies " for all other applicants for employment, shall not exceed the amount of the first week's wages or salary unless the period of employment is for at least one year, and at a yearly salary, and in that event the gross fee charged shall not exceed five per centum of the first year's salary * * *." Charges to the applicants in question were concededly governed by the above-quoted clause.

In June, 1939, petitioner obtained with the Pepsi-Cola Company, Long Island City, New York, employment for six men at salaries payable in monthly installments of $250 a month. Each of the applicants signed a contract with petitioner under the terms of which the applicant agreed, if placed in a position, to pay petitioner a fee equivalent to three per cent of his annual earnings if the period of employment was for at least one year and at a yearly salary of $3,000. After placing the men, petitioner billed each of them for a fee of $90, three per cent of $3,000, the sum they would receive if they continued to work a full year at $250 a month.

One of the applicants, Shaw, paid the $90 and thereafter filed a complaint with the commissioner claiming he should have been charged for only one week's salary, or $57.69. Greenwood, another applicant, refused to pay the $90 and paid only $57.69, the equivalent of a week's salary. Another named Faulkner paid the $90 but worked only approximately eleven months and received a refund of $32.31 from petitioner, the difference between $90 and one week's salary. In its petition, petitioner states under oath that another applicant, Sullivan, paid $70, petitioner had demanded $90 but the balance was unpaid.

The commissioner instituted an investigation which resulted in a number of hearings. During the course of the investigation the commissioner received a letter from the Pepsi-Cola Company, the employer of the applicants in question, stating that all such employees were hired on a monthly basis at $250 a month, were not subject to any contract or any definite period of employment, and could be discharged at any time. No competent evidence to contradict such terms of employment was adduced

At a hearing on August 29, 1939, complainant Greenwood testified that he was billed for $90 though he did not have a hiring for a year. Petitioner's president stated that Greenwood had paid only a week's salary and suggested that the matter be allowed to stand and be taken up again at the end of the year. The commissioner stated that he was very insistent that the agency should charge only one week's salary for the employment in question, but closed the hearing with the statement that he would take the matter up again at the end of the year.

On May 6, 1940, there was another hearing on the charges at which an officer and an attorney appeared for petitioner. On that date in connection with the Shaw complaint petitioner wrote the commissioner a letter inclosing a check to the order of Shaw for $29.08 representing a refund to him, stating it was made in compliance with the commissioner's demand as the only basis acceptable to the commissioner for the renewal of petitioner's license, but also alleging that petitioner at all times maintained that the higher charge was proper. Petitioner concluded the letter with the statement that inasmuch as " this refund complies in full with your demand," the license should issue. After reading the letter the commissioner again stated his interpretation of the statute, petitioner stated its interpretation, and on the assurance that the refunds were made, the commissioner approved petitioner's application for renewal of its license.

Thereafter, when Shaw had actually worked for over a year with the Pepsi-Cola Company, petitioner demanded the balance

claimed and sued him in the Municipal Court. Shaw settled by paying.

At a later hearing on August 15, 1940, the deputy commissioner contended that on petitioner's letter the commissioner had the right to believe that the matter had been closed, but petitioner's president stated that he told the commissioner during July of the previous year that when the period of a year was up petitioner would seek to recover the balance.

A final hearing was held August 26, 1940, before the commissioner of licenses at which the Shaw and the Sullivan cases were discussed. A verified statement of Sullivan, made a few days before in petitioner's absence, was read to petitioner's representatives. Petitioner conceded that Shaw had paid the balance claimed by it. At the close of this hearing the commissioner stated he would revoke the license.

Petitioner contends that the fees were chargeable immediately after the applicants obtained employment, subject, however, to a refund in conformity with General Business Law, section 186, if the employment did not in fact last a whole year, and calls attention to the surety bond in the sum of $1,000 which all employment agencies are required to file pursuant to General Business Law, section 177, to compensate persons who are entitled to refunds from licensed agencies.

While the language of section 185 could have been more explicit to express the intention, we think the statute properly interpreted means that a fee based on any percentage of the annual salary may not be exacted unless there is at the time the placement is made an agreement of hiring for at least a year and at a yearly salary. A gross fee not exceeding five per cent of the first year's salary is chargeable when by the terms of the hiring, the period of employment is for at least a year and at a yearly salary even though the same is payable monthly or semi-monthly. On the facts established with regard to the terms of the hiring in question, the applicants were not employed for the period of at least a year nor at a yearly salary. Accordingly petitioner's exaction of the percentage fee was not authorized. The commissioner has correctly construed the language of section 185 and petitioner's construction cannot be sustained.

Petitioner's contention that applicants should pay the fee and later apply for a refund if in fact the period of employment did not last a year is untenable and not sustained, as claimed, by our ruling in *Matter of Executive Service Corporation* v. *Moss* (256 App. Div. 345). In that case we merely held that the commissioner had no power to require a written contract between employer and

employee before a greater percentage than one full week's salary might be charged.

Relying on *Ribnik* v. *McBride* (277 U. S. 350), petitioner had originally contended that the statute violated the Constitution of the United States. In view, however, of the more recent decision of the United States Supreme Court in *Olsen* v. *Nebraska*, decided April, 1941 (313 U. S. 236), overruling *Ribnik* v. *McBride*, that point is not and cannot be urged before us as a ground for annulment of the commissioner's order.

It is alleged that petitioner is a large employment agency and that it is an undue hardship to penalize it by depriving it of its license and putting it out of business by reason of a doubtful question of statutory construction in which it insisted in good faith on what it believed to be its statutory rights. Both sides agree that this is a test case on the proper interpretation of the statute. Petitioner contended, apparently in good faith, that it was acting within the provisions of the statute. The commissioner ruled otherwise. Both sides sought clarification of the law to guide future action. In that state of facts the penalty seems a harsh one. But it would also seem that the statute could have been tested in some other manner, and, in any event, subdivision 3 of section 191 of the General Business Law provides that " when it is shown to the satisfaction of the * * * commissioner of licenses that any licensed person is guilty of any * * * illegal conduct in connection with the conduct of said business, it shall be the duty of the * * * commissioner of licenses to revoke the license of such person * * *."

Even though there may be some irregularities in procedure, the evidence herein establishes in two cases petitioner collected fees that exceeded the maximum allowed by statute. Petitioner admits that it sued for and collected the balance from Shaw. Its own verified petition admits that Sullivan paid seventy dollars, which was in excess of the week's salary chargeable under the statute. No subsequent refund has been made either to Shaw or to Sullivan. Accordingly, despite the apparent hardship, we may not annul the commissioner's order.

The determination of the commissioner revoking petitioner's 1940 license should be confirmed, with fifty dollars costs and disbursements to the respondent, and the petition dismissed.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Determination unanimously confirmed, with fifty dollars costs and disbursements to the respondent, and petition dismissed.