[L. A. No. 18363. In Bank. Oct. 1, 1942.]

THE BUSINESS MANAGEMENT CORPORATION (a Corporation), Petitioner, v. THE DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STATISTICS AND LAW ENFORCEMENT, OF THE STATE OF CALIFORNIA et al., Respondents.

Hanna & Morton, Gang & Kopp, Byron C. Hanna and R. E. Kopp for Petitioner.

L. L. Schaumer, Charles Dreyfus and Fred G. Goldsworthy for Respondents.

CURTIS, J.—Petitioner sought a writ of mandamus in the District Court of Appeal, Second District, Division Two, to compel the respondent department to grant petitioner a license to conduct business as a motion picture employment agency under a statutory classification applicable to the location of its office in the city of Beverly Hills. The writ issued as prayed. Thereafter a petition by respondents for hearing in this court was granted.

There is no conflict as to the material facts upon which this proceeding was predicated. On January 26, 1942, petitioner filed with respondents an application for a license to operate a motion picture employment agency in the city of Beverly Hills, pursuant to the provisions of the Labor Code of California, division II, part 6, chapter 1. The city of Beverly Hills has a population in excess of 25,000 and not exceeding 100,000.

In the form of application furnished petitioner by respondents was the query "Places where agency will operate," which question petitioner answered as follows:

"Your applicant maintains a suite of offices which are utilized by applicant in the pursuit of said occupation and the rendition of said services at 9484 Wilshire Boulevard, Beverly Hills, California, and the applicant's business will be conducted and transacted at said offices. The applicant on an average of several times a week will call on behalf of its clients at RKO motion picture studios, Paramount motion picture studios, and other motion picture studios in the City of Los Angeles and at motion picture studios located elsewhere in the County of Los Angeles at such localities as Culver City and upon employers of motion picture artists wherever such employers may be found and interviewed, in

places of business other than the premises of applicant; in hotels, restaurants or private homes in any locality in the State of California for the purpose of securing and negotiating employment for clients represented by applicant, and occasionally at such motion picture studios or elsewhere on locations where motion pictures are being produced, for the purpose of counseling or advising with said clients in connection with the rendition of artistic services by them at such places under existing contracts of employment.''

At the time of filing with respondents the aforesaid application petitioner tendered a check in the sum of $50 as payment of the annual license fee. On January 28, 1942, respondents denied petitioner's request for a license on the ground that petitioner, under the foregoing statement detailing the proposed scope of its field operations, intended to conduct its business not only in the city of Beverly Hills but also in the city of Los Angeles, which latter place had a population in excess of 100,000, and, therefore, the annual license fee would be $100 pursuant to the provisions of section 1588 of the Labor Code, which reads as follows:

''Every employment agency shall pay to the Labor Commissioner annually at the time a license is issued or renewed a license fee of:

''(a) One hundred dollars in cities having a population of over one hundred thousand.

''(b) Fifty dollars in cities having a population of over twenty-five thousand and not exceeding one hundred thousand.

''(c) Ten dollars in all other places.

''All figures as to population shall be based on the latest United States Government census.''

The single question to be determined in this case is whether the petitioner's acknowledged plan of doing a portion of its employment agency business in the city of Los Angeles as specified in its application establishes the latter ''place'' as an area of operation within the contemplation of the prescribed schedule of fees. In measuring the import of the basic statutory classification fixing the license rate, regard must be had for the *present* wording of section 1593 of the Labor Code, which, so far as is here material, provides as follows: ''No license shall protect any other than the person to whom it is issued nor any *places* other than *those* designated in the license.'' [Emphasis added.] As so modi-

fied in 1941 by the Legislature, the change of language in this section consisted solely in the substitution of the word "places" for the term "place" and the corresponding grammatical variation of the italicized demonstrative pronoun to read "those" instead of "that"; in other respects, the form of the sentence was left unaltered by the amendment. Thus, the significance of the plural in lieu of the singular reference to the location of the licensee's business operations must be accorded appropriate weight in the disposition of the issue in controversy.

Noteworthy at the outset is the stipulation of the parties as to the custom prevailing before the date of the aforesaid statutory change with respect to the issuance of a license to an employment agency. They agreed that "prior to the amendment of section 1593 of the Labor Code in 1941, if an applicant for an employment agency license presented an application showing that the applicant intended to transact business at a particular location, a single license fee was collected by the Labor Commissioner from such applicant, the amount of which was determined by the location specified. If the applicant specified two or more of such places of business, separate license fees were collected for each such specified location, determined according to the population of the city of each such location." The opposing parties recognize that the previous restriction of the coverage of the license to one place of operation only was abandoned by the 1941 amendment to section 1593 so as to permit the protection of more than one location by the issuance of a single license, but they differ in their construction of the word "places" as it appears in the presently effective enactment. Petitioner argues that the Legislature by the use of the term in question intended to refer merely to *fixed places of business* of an employment agency—its office addresses—and that therefore the petitioner's maintenance of a single office located within the city limits of Beverly Hills controls the amount of its license fee irrespective of its designation of the city of Los Angeles as a necessary field of operation for the proper servicing of its clients. On the other hand, respondents contend that by virtue of the aforementioned amendment all cities listed by an applicant as places of operation, regardless of whether or not it maintains offices in such locations, enter into the determination of the license rate, which should be fixed according to the population of the largest community so specified, and

that consequently the petitioner's statement of its intent to do some business in the city of Los Angeles subjects it to a license fee commensurate with the privilege of operating in a place of that size. Consideration of the substantial character of the change made in the wording of section 1593 by the 1941 amendment, as noted, in relation to other pertinent provisions of the Labor Code evidencing the legislative scheme of treating the operation of employment agencies as a field of business activity "affected with a public interest" (*Olsen* v. *State of Nebraska ex rel. Western Reference & Bond Association, Inc.*, 313 U.S. 236 [61 S.Ct. 862, 85 L.Ed. 1305, 133 A.L.R. 1500]) demonstrates the propriety of respondents' position in the premises and constrains the rejection of the narrow line of argument advanced by petitioner.

As originally enacted in 1913, section 1 of the Employment Agency Act (Stats. 1913, ch. 282, p. 515, § 1; Deering's Gen. Laws, Act 2349) defined the term "employment agency" as the *business* of conducting an agency for the purpose of procuring or attempting to procure employment or engagements for persons seeking such, *"whether such business is conducted in a building or on the street or elsewhere."* (Emphasis added.) Upon the codification of this branch of the law in the Labor Code, the Legislature re-enacted in substantially the same language this definition of an employment agency, although substituting in lieu of the above-quoted italicized clause the following words: "*regardless of where such business is conducted.*" (Emphasis added.) (Labor Code, sec. 1551, subd. (a).) Thus from the date of its original treatment of this subject it is plain that the Legislature recognized that the *business* of such an agency is not restricted to a fixed location, an office address, but that it as an activity of a "floating" character may be readily pursued in any part of the state where appropriate contacts promotive of its interests may be made.

Also of importance in this connection is the statutory schedule of license fees, graduated in amount according to the city population figures specified in section 1588, as above quoted. Measured by the context of that enactment, it is clear that the word "places" there relates to the geographical units or territory wherein the agency contemplates operation, and not to the buildings or rooms used for its office accommodations. Correlating this section with the above-quoted language of section 1593, as amended, it reasonably follows that

the Legislature intended to use the term "places" in the same sense in both cases, so that by virtue of the latter mentioned code provision a licensee accorded the *privilege* of doing an employment agency business in specified localities would be protected in its scope of operation only as to those *places* (cities, towns or other geographical units) designated in the license. Of course, it is readily conceivable that an employment agency might conduct all of its business at its fixed address, in which event its field of operation and its office would be the *same place* and its license fee would be scaled accordingly. However, where the applicant lists in its request for a license *places* of proposed operation additional to the locale of the office, the Legislature by its amendment to section 1593 has provided a means whereby such licensee may enjoy the privilege of doing business in the various enumerated communities upon the procurement of a *single* license, but interwoven in such extension of the protective limits of a license is the necessary implication that the place of largest population so designated in the application shall control the amount of the license fee payable under the terms of section 1588.

Inapplicable to the consideration of the point of statutory construction here at issue is the petitioner's reference to certain sections of the Labor Code expressly alluding to the premises where the agency maintains its offices and illustrative of the Legislature's use of the word "place" in relation to the building or rooms serving as the fixed headquarters of the licensee. Such provisions dealing with matters connected with the posting of the license (§ 1581), the investigation of the premises to determine their fitness (§ 1583), and the recital of certain kinds of places as unsuitable for the location of an employment agency (§ 1585) merely manifest the Legislature's recognition of the need for regulating the conduct of this particular business at its source—the place where applicants for employment would be apt to congregate—in the protection of the public welfare and as a proper exercise of the state's police power. However, these purely regulatory laws are to be distinguished from statutory enactments concerning license rates based on a territorial classification and scaled according to the size of the community to be served. The latter legislation is predicated upon the accepted definition of the word "license" as a grant of permission or authority to do a

particular thing, to exercise a certain privilege, or to carry on a particular business or pursue a certain occupation. (16 Cal. Jur. 187 et seq.) Consequently such statutes in their use of the word "places" must be interpreted according to their context as referring to cities, towns or other geographical units wherein the licensee is accorded the privilege of doing business, and not simply to fixed office addresses.

Likewise without force in the present situation is the petitioner's citation of such cases as *Arram* v. *Walters*, (1936) 2 All England Law Reports Annotated, 959, and *Kirkwood* v. *Gadd*, 1910 App. Cas. 422, for the proposition that a registrant's office location must be deemed his place of business when only *incidental* transactions and *isolated* acts are performed elsewhere. The question under consideration here relates to the issuance of a license authorizing the conduct of *future* business in certain specified territories, and in applying the schedule of fees prescribed in section 1588 as the standard governing the extension of the privilege sought by the licensee, there is no available method of prejudging the amount of activity in which the applicant *will* engage in the cities designated as *prospective* places of operation. From this aspect it is manifest that the Legislature by the 1941 amendment to section 1593 provided a scheme whereby an agency under *one* license would receive protection in *all* locations listed in its application, but the applicant desiring to operate in a city of class (a) size under section 1588, while maintaining its office in a smaller center of population, would be put on a parity with an agency confining its conduct of business to its office address in the larger place, and each would pay the same amount as a license fee for the exercise of a like privilege of business operation. That this is a fair and equitable interpretation of the legislation in question is beyond dispute.

Adverting briefly to the facts in the present case, the petitioner's statement in its application as above quoted discloses its intent to call "on an average of several times a week . . . on behalf of its clients" at various motion picture studios "in the City of Los Angeles . . . in places of business other than the premises of applicant . . . for the purpose of securing and negotiating employment for" its clients. Such plan of activity unquestionably demonstrates a regularity of pursuit and a continued course of transactions; but what portion it will bear to the total amount of

annual business done by the petitioner cannot be foreseen, nor does such an estimate enter as a factor of consideration. Accordingly, the petitioner's acknowledged *places of operation* are the cities of Los Angeles and Beverly Hills, and the former being the larger in size under the aforementioned statutory classification determines the fee payable by the petitioner as a prerequisite to its exercise of the *privilege of doing business* under the license sought.

The alternative writ heretofore issued by the aforementioned District Court of Appeal is discharged and a peremptory writ of mandate is denied.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Peters, J. pro tem., concurred.