KELLY-SULLIVAN, INC., et al., Plaintiffs, *v.* PAUL Moss, as Commissioner of Licenses of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, February 10, 1943.

*William A. Hyman* for plaintiffs.

*William C. Chanler, Corporation Counsel* (*Charles C. Weinstein* and *Bernard Friedlander* of counsel), for defendants.

*Milton R. Weinberger* for The League of New York Theatres, *amicus curiæ.*

*Rebecca Brownstein* and *Paul N. Turner* for Actors Equity Association, *amicus curiæ.*

NULL, J. The question presented by plaintiffs' application for judgment on the pleadings is the constitutionality of chapter 614 of the Laws of 1940 (amdg. General Business Law, art. X-B, §§ 167–169-j, incl.). In their first cause of action, the plaintiffs contend that so much of the statute is invalid as limits the maximum premium upon the resale of theatre and amusement tickets to seventy-five cents for each ticket. It is urged that the imposition of such limitation is violative of the Fourteenth Amendment of the Constitution of the United States and of section 6 of article I of the Constitution of the State of New York. In the second cause of action, the plaintiffs contend that the entire statute is invalid upon the ground that it contravenes sections 11, 12 and 13 of article IX of the Constitution of the State of New York.

The action is for a declaratory judgment and for relief restraining the defendants from enforcing the provisions of the statute. The material allegations of the complaint are not controverted and there is no real question of fact in issue. The relief sought by way of declaration is not inappropriate for the purpose of testing a constitutional question and the court may dispose, summarily, of the matters of law thus presented. (*Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198.)

Plaintiffs insist that the question here involved is controlled by the determination in *Tyson & Bro.* v. *Banton* (273 U. S. 418), which invalidated a similar statute on the ground that it exceeded the constitutional limitations imposed upon the exercise of the police power. It would serve little purpose to analyze precedents based upon familiar principles hitherto thought applicable. (Cf. *Slaughter-House Cases*, 16 Wall. 36; *Munn* v. *Illinois*, 94 U. S. 113; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hurtado* v. *California*, 110 U. S. 516; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746; with *Chicago, M. & St. P. Ry. Co.* v. *Minnesota*, 134 U. S. 418; *Lochner* v. *New York*, 198 U. S. 45; *Adkins* v. *Children's Hospital*, 261 U. S. 525; *Burns Baking Co.* v. *Bryan* 264 U. S. 504; *Tyson & Bro.* v. *Banton, supra; Ribnik* v. *McBride*, 277 U. S. 350; *Baldwin* v. *Missouri*, 281 U. S. 586. Cf., also, *Mugler* v. *Kansas*, 123 U. S. 623; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Holden* v. *Hardy*, 169 U. S. 366.) Similar contentions in a prior action between some of the parties to this litigation were passed upon in this court. Mr. Justice BERNSTEIN, in a scholarly and comprehensive opinion, stressed the contrast between the old and new concepts of legislative power and pointed out that the rule in the *Tyson* case was no longer applicable. (*Kelly-Sullivan, Inc.*, v.

*Moss,* 174 Misc. 1098, affd. 260 App. Div. 921.) Since that decision the United States Supreme Court, in *Olsen* v. *Nebraska* (313 U. S. 236), has reiterated that the sphere of legislative action upon property or business and the regulation of the use thereof is not restricted to such use which the court may deem to be " affected with a public interest."

Concepts long established, although not without vigorous dissent, have recently been the subject of scrutiny and reappraisal. (*Nebbia* v. *New York,* 291 U. S. 502; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379; *Olsen* v. *Nebraska, supra.*) Notions of public policy embodied in earlier decisions have ceased to be the test of constitutionality. (*Olsen* v. *Nebraska, supra.*) Independently of these rejected principles, the doctrine of the *Tyson* case cannot survive.

On the contrary, it is the dissenting opinions in the *Tyson* case which formulate the measuring rod of due process. In the exercise of its police power the Legislature may regulate any business, the conduct of which it deems to be detrimental to the general public, who but for legislative intervention would be powerless to protect themselves against extortionate and unjust practices. Without attempting to limit by definition, unless expressly forbidden by the Constitution, the criterion of legislative power is the promotion of the general public welfare.

The allegations that the maximum premium fixed by the statute is unreasonable, confiscatory and discriminatory are without merit. " The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned. * * * And statutes prescribing the terms upon which those conducting certain businesses may contract, or imposing terms if they do enter into agreements, are within the state's competency." (*Nebbia* v. *New York, supra,* pp. 527, 528.)

The failure of the Legislature to distinguish between high-priced tickets and low-priced tickets, or to differentiate between theatre tickets and tickets of admission to sporting and other amusement events, does not render the statute invalid. The court has no concern with the policy embodied in the statute. Having once determined the power of the Legislature, the need, appropriateness or wisdom of the measure is a matter purely of legislative concern. (*Nebbia* v. *New York, supra; Olsen* v. *Nebraska, supra.*) The remedy for unwise or unnecessary action lies in the ballot box.

Similarly, there is apparent no violation of equal protection. The Fourteenth Amendment does not preclude distinction in the treatment of persons falling within different categories. The only limitation imposed by the Amendment is that the classification be neither arbitrary nor fanciful. (*U. S. Mortgage Co.* v. *Matthews,* 293 U. S. 232; *Borden's Co.* v. *Ten Eyck,* 297 U. S. 251; *St. John* v. *New York,* 201 U. S. 633.) Sound, indeed, are the reasons which suggest themselves for distinguishing between ticket brokers and operators of places of public amusement. For one thing, the hazards of highly competitive enterprise and the need for large capital investment clearly differentiate the one from the other. We do not mean to imply that these distinctions exempt operators of places of public amusement from legislative control, or place them beyond the pale of legislative regulation. We merely hold that they furnish a sound basis for the classification made by the Legislature.

In like fashion, no violation of the Home Rule provisions of the State Constitution (art. IX, §§ 11, 12) is discernible. The legislation, by its terms and in its effect, is applicable equally to all cities. Though ticket brokers may be found at the present time only within the confines of the city of New York, there is no limitation upon their right to engage in business in other cities. The statute deals with matters affecting the education and amusement of the people. It is, in substantial degree, a matter of State concern. From this, the Legislature derives its authority to act. (*Adler* v. *Deegan,* 251 N. Y. 467; *New York Steam Corp.* v. *City of New York,* 268 N. Y. 137; *Kelly-Sullivan, Inc.,* v. *Moss, supra; Robertson* v. *Zimmerman,* 268 N. Y. 52.)

The plaintiffs maintain that the character of their business is inherently a luxury; that it is availed of solely by those who are able and willing to pay the greater exaction necessitated by their services. They fail to discern what was patent to the Legislature; that in relation to their business, a policy so unbridled and unrestricted tended to and did create the very evil which was sought to be prevented by the statute. It is in the broad public interest that the cultural and spiritual values of the theatre and other entertainment and amusement be safeguarded to the public at large upon such terms as the Legislature deems compatible with the general welfare. Saving express constitutional provision to the contrary, the legislative power to do so is no less because it clashes with a private right.

The plaintiffs have chosen to rest upon the issues of law presented alone by the pleadings and the admissions of the defend-

ants pursuant to section 322 of the Civil Practice Act. They have not sought a trial nor is one necessary under the circumstances. Giving full effect to the material allegations of the complaint and to the admissions of the defendants, "In final analysis, the only constitutional prohibitions or restraints * * * suggested for the invalidation of this legislation are those notions of public policy embedded in earlier decisions of this Court but which, as Mr. Justice HOLMES long admonished, should not be read into the Constitution." (*Olsen* v. *Nebraska, supra,* pp. 246, 247.)

Accordingly, plaintiffs' motion for judgment on the pleadings is denied. Judgment is granted to defendants pursuant to rule 112 of the Rules of Civil Practice (*Wilmerding* v. *La Guardia,* 176 Misc. 449) dismissing both causes of action. Settle order.