

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

April 6, 1950

Hon. M. B. Morgan, Commissioner
Bureau of Labor Statistics
Austin, Texas

Opinion No. V-1035

Re: Validity of proposed con-
tract between National
Sales Personnel System
and licensed private em-
ployment agencies in Texas.

Dear Sir:

Your request for an opinion presents the question of whether the National Sales Personnel System's mode of opera- tion in Texas as evidenced by their contract to be executed with licensed private employment agencies amounts to a violation of the "Texas Private Employment Agency Law," (Acts 51st Leg., 1949, ch. 245, p. 453, and codified as Art. 5221a-6, V.C.S.).

The copy of this proposed contract which you have sub- mitted is called an "Operating Agreement." It provides that the National Sales Personnel System will do advertising and promo- tional work in securing business of employers who desire to hire sales employees in a particular area. When such business is acquired, the National Sales Personnel System will refer it to the member office in the particular locality who will in turn lo- cate a prospective employee for the employer. The National Sales Personnel System is to be compensated for its services by sharing in the fee charged the applicant employee for whom employment is secured. The agreement states that the National Sales Personnel System will have no contact with applicants for employment and that the member offices are to charge their own local contract rates to the applicant.

We are of the opinion that such plan of operation as evi- denced by this agreement does not amount to a violation of the "Texas Private Employment Agency Law." We, of course, are not at this time confronted with actual practices or conduct of operation under this contract.

We do not believe that National Sales Personnel System's proposed activities under this agreement are such as would require

a license within the contemplation of this Act. This Act provides for criminal prosecutions (Art. 5221a-6, Sec. 13, V.C.S.) and the rule of strict construction applies in the sense that a statute of a penal nature will not be extended by construction beyond the necessities of the case. 39 Tex.Jur. 276, Statutes, Sec. 146. The provisions of this law do not reveal any specific intent on the part of the Legislature to regulate out-of-state agencies as was done in the "Labor Agency Law" passed at the same session of the Legislature (Acts 51st Leg., 1949, ch. 234, p. 434, and codified as Art. 5221a-5, Sec. 6, V.C.S.). It is therefore necessary to determine the legislative intent from the terms used and the object in view in enacting such law. 27 Tex.Jur. 870, Licenses, Sec. 20. The conclusion is inescapable that the law is intended for the protection of persons seeking employment. Ribnik v. McBride, 277 U.S. 375 (1928). (See annotations in 56 A.L.R. 1327 and 133 A.L.R. 1500 concerning this type of legislation.) The law seeks to place responsibility on the person or agency in actual contact with these persons by requiring a license. Such licensees are the ones regulated and, so long as actual procurement of and contact with applicant employees is conducted through such licensed agencies, sufficient control may be exercised to effect the purpose of the law. We do not think the "Operating Agreement" of the National Sales Personnel System with licensed Texas private employment agencies on its face can violate this purpose.

We are further of the opinion that the agreement to divide fees collected from applicant employees who have secured employment through the promotion efforts of the National Sales Personnel System does not violate Article 5221a-6, Sec. 10 (h). This section provides that no private employment agent shall:

"(h) Divide or offer to divide, directly or indirectly, any fee charged or received with any person who secures workers through such agent, or to whom workers are referred by such agent."

This prohibition against dividing fees was intended to prevent employment agents from dividing fees with employers or persons in a hiring capacity for the employer, and not intended to apply to the situation here questioned. This was an abuse incident to the system of private employment agencies which led to their regulation. This abuse is described in the United States Bureau of Labor Bulletin No. 109, p. 36, published in October, 1912, which states in part as follows:

"A most pernicious practice is the collusion with foremen or superintendents by which the employment agent 'splits fees' with them. That is, the foreman agrees to hire men of a certain employment agent on condition that one fourth or one half of every fee collected from men whom he hires be given to him. This leads the foreman to discharge men constantly in order to have more men hired through the agent and more fees collected. It develops the 'three-gang' method so universally complained of by railroad and construction laborers, namely, one gang working, another coming to work from the employment agent, and a third going back to the city."

This opinion is limited to the question presented and other provisions of the contract are not passed upon or considered herein.

## SUMMARY

Under the facts submitted, an out-of-state organization which does not deal directly with persons in Texas seeking employment, but which forwards all inquiries for employees to a licensed Texas Private Employment Agency is not required to have a license as a Private Employment Agency in Texas. A licensed Texas Private Employment Agency may divide fees with an out-of-state organization through which employment inquiries are referred to the Texas agency, so long as no fees are divided with the employers. Article 5221a-6, V.C.S.

Yours very truly,

PRICE DANIEL
Attorney General

Joe S. Moore

Walter F. Woodul, Jr.

Walter F. Woodul, Jr.
Assistants

APPROVED:

Ned McDaniel
State Affairs

Charles D. Mathews
Executive Assistant

JSM/WFW:v