Kenneth A. PLANTE et al., Plaintiffs,

v.

Larry GONZALEZ et al., Defendants.

Jon C. THOMAS, Plaintiff,

v.

Larry GONZALEZ et al., Defendants.

Nos. TCA 77–0852 and TCA 77–0868.

United States District Court,
N. D. Florida,
Tallahassee Division.

Sept. 11, 1977.

Tobias Simon, Miami, Fla., Charles L. Carlton, Lakeland, Fla., Richard C. McFarlain, Tallahassee, Fla., for plaintiffs Plante, et al. in TCA 77–0852.

William E. Williams, Mahoney, Hadlow & Adams, Tallahassee, Fla., for plaintiff Thomas in TCA 77–0868.

Robert L. Shevin, Atty. Gen. of Florida, James Whisenand, Deputy Atty. Gen., Douglas C. Kearney, Asst. Atty. Gen., Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

STAFFORD, District Judge.

The plaintiffs in these consolidated cases seek a declaratory judgment that the finan-

cial disclosure requirement imposed upon elected state and county officers by Article II, § 8 of the Constitution of the State of Florida contravenes personal privacy rights guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343. All the plaintiffs in both lawsuits are members of the Florida State Senate. The defendants are the Florida Commission on Ethics, the Executive Director of the Commission, and the Governor and Secretary of State of the State of Florida.

Presently before the court are the defendants' motions to dismiss for failure to state a claim upon which relief can be granted. A hearing on this motion was held on September 9, 1977. After careful consideration of the arguments made by counsel and the relevant precedents, it is the opinion of this court that the plaintiffs cannot prevail under any state of facts which could be proved in support of their claim. *Cook & Nichol, Inc. v. Plimsoll Club,* 451 F.2d 505 (5th Cir. 1971). Accordingly, the motion to dismiss should be granted.

Article II, § 8 of the Florida Constitution, popularly known as the "Sunshine Amendment," was placed on the November, 1976, general election ballot by popular initiative and was adopted by a 4–1 vote of the Florida electorate. The portions of the Amendment that are pertinent to the present litigation provide as follows:

A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:

(a) All elected and constitutional officers and candidates for such offices and, as may be determined by law, other public officers, candidates, and employees shall file full and public disclosure of their financial interests.

.    .    .    .    .    .

(h) Schedule—On the effective date of this amendment and until changed by law:

(1) Full and public disclosure of financial interests shall mean filing with the secretary of state by July 1 of each year a sworn statement showing net worth and identifying each asset and liability in excess of $1,000 and its value together with one of the following:

a. A copy of the persons's most recent federal income tax return; or

b. A sworn statement which identifies each separate source and amount of income which exceeds $1,000. The forms for such source disclosure and the rules under which they are to be filed shall be prescribed by the independent commission established in subsection (f), and such rules shall include disclosure of secondary sources of income.

(2) Persons holding statewide elective offices shall also file disclosure of their financial interests pursuant to subsection (h)(1).

■ It is not the plaintiffs' contention that compelled disclosure of a public officer's personal finances constitutes a *per se* violation of a constitutionally based right of privacy. Rather, they argue that the Amendment's disclosure requirements sweep unnecessarily broadly, placing an unwarranted and unreasonable burden upon what they portray as a fundamental right to privacy in personal financial affairs. *See NAACP v. Alabama,* 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). The general rule is that a fundamental constitutional right may be intruded upon by a state only in furtherance of a legitimate and compelling state interest, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), and that the means used to achieve that legitimate governmental purpose must be no broader nor more limiting of personal liberties than is necessary to attain the goal sought, *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

Reasoning from the cases cited in the preceding paragraph and similar decisions, the plaintiffs conclude that the method chosen by the people of the State of Florida for insuring the honesty of their representatives in state and county government sim-

ply goes too far. Other, less drastic means than those used in Article II, § 8 of the Florida Constitution, it is claimed, would be as effective in serving the same purposes. Specifically, the plaintiffs urge that there is no necessity for public officials to be required to disclose the sources of their personal income, the amount of income received from each source, and the dollar value of personal assets. They argue that revelation of sources of income will drive away the clients and customers who utilize the private businesses and services of public officers; listing of specific dollar amounts will serve only to titillate the idly curious. The plaintiffs further suggest that the public interest in preventing corruption or conflict of interest may adequately be satisfied by the adoption of alternative methods of disclosure that would be less intrusive upon their privacy, among which would be a procedure requiring only that financial disclosure forms be submitted to an independent commission that would hold them in strict confidence unless and until charges of wrongdoing are brought against a public officeholder.[1]

The basic flaw in the plaintiffs' "less drastic means" analysis is that it assumes there is a fundamental right of privacy inherent in the personal financial affairs of public officers. This is an expansive view of the constitutional privacy right that is unsupported by recent Supreme Court decisions. It is true that the Supreme Court has on several occasions recognized the existence of a protected "zone of privacy" which the state has little or no prerogative to invade. See *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Despite earlier doctrinal disagreement as to the constitutional source of this guarantee of personal privacy, *Griswold, supra*, it is now manifest that it is a "liberty" safeguarded by the Due Process Clause of the Fourteenth Amendment.[2] As the court noted in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the cases involving "privacy" have involved at least two distinct types of interests. "One is the individual interest in avoiding disclosure of personal matters [which is the interest asserted by the plaintiffs in the case at bar], and another is the interest in independence in making certain kinds of important decisions." 429 U.S. at 599, 97 S.Ct. at 876, 51 L.Ed.2d at 73 (footnotes omitted).

While the Supreme Court has acknowledged that great deference is to be paid to certain personal privacy values, it has cautioned that the substantive reach of the Fourteenth Amendment in the realm of personal privacy is not to be given a broad scope, but rather a carefully circumscribed one.[3] Only those "personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,'" are to be included within the "guarantee of personal

1. In addition, the plaintiffs profess that their constitutional objections would be obviated by a less burdensome financial disclosure requirement similar to that contained in Florida Statutes § 112.3145, the statutory precursor to Article II, § 8 of the Florida Constitution. The statute does not necessitate the detailing of asset values, income amounts or the sources of income.

2. "This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions on state action, *as we feel it is*, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 727 (emphasis added).

3. As Mr. Justice Powell stated for the plurality in *Moore v. City of East Cleveland*, 431 U.S. at 502, 97 S.Ct. at 1937, 52 L.Ed.2d at 539:

Substantive due process has at times been a treacherous field for this Court. There *are* risks when the judicial branch gives enhanced protection to certain substantive liberties *without the guidance of the more specific* provisions of the Bill of Rights. As the history of the Lochner era demonstrates, there is reason for concern lest the only limits to such judicial intervention become the predilections of those who happen at the time to be Members of this Court. That history counsels caution and restraint. (Footnote omitted).

privacy." *Roe v. Wade, supra,* 410 U.S. at 152, 93 S.Ct. at 726, *quoting Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Formulated differently, the Constitution protects those privacy values that are "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531, 540 (1977).

■ To date the Supreme Court has extended the fundamental right of privacy only to a narrowly drawn area surrounding family life and the types of highly personal choice intrinsic to the family. "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973). Similar language is found in *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); and *Whalen v. Roe,* 429 U.S. at 600, 97 S.Ct. at 876, 51 L.Ed.2d at 73 n. 26. Moreover, it could hardly be claimed that the interest in personal financial privacy asserted by the plaintiffs here shares the same attributes as those interests the court has deemed "fundamental." "To equate this interest with the fundamental decisions to marry and to bear and raise children is to extend the limited substantive contours of the Due Process Clause beyond recognition." *Moore v. City of East Cleveland,* 431 U.S. at 537, 97 S.Ct. at 1955, 52 L.Ed.2d at 560 (Stewart, J., dissenting). Neither can it be said that financial privacy is so "implicit in the concept of ordered liberty" that its invasion by the state would thwart basic notions of justice, *Palko v. Connecticut, supra,* or that it is so "deeply rooted in this Nation's history and tradition" as to warrant inclusion in the roster of fundamental constitutional rights, *Moore v. City of Cleveland, supra.* The secrecy of one's personal assets and business transactions has never been granted the freedom from governmental scrutiny traditionally accorded the "sanctity of the family", *Moore v. City of East Cleveland,*

431 U.S. at 503, 97 S.Ct. 1932, 52 L.Ed.2d at 540, as is demonstrated by the long-standing financial disclosure requirements imposed by welfare, social security, tax, and securities regulation laws.[4]

The conclusion that personal financial interests do not rise to the constitutional level of those values of privacy and liberty considered fundamental does not, of course, close the inquiry in the present case. It is still necessary to determine the proper standard of review to be applied and to analyze this case in light of that standard. *Whalen v. Roe, supra,* and *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), suggest that the appropriate test in a case involving a non-fundamental privacy interest is the rational basis test traditionally applied where economic and social legislation is challenged as unconstitutional, that is, whether the regulation bears a rational relationship to the achievement of a legitimate state interest. On the other hand, *Nixon v. Administrator of General Services,* —— U.S. ——, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), which is closer factually to the case at hand than are *Whalen* and *Kelley,* implies the necessity of a "balancing test", by which the relative merits of the public interest in disclosure are weighed against the private interest in non-disclosure. Cf. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

■ Judged by a standard of rationality, Article II, § 8 of the Florida Constitution is undeniably constitutional. It constitutes a reasoned effort to deal with the problems posed by governmental corruption and the loss of public confidence in the integrity of elected and appointed state officials. Although the plaintiffs contend the Amendment goes farther than is necessary to serve these interests and includes provisions that have little relation to the end sought, it is not the constitutional province of the federal judiciary to question the necessity or wisdom of a state legislative or constitutional enactment. *Olsen v. Nebraska ex rel. Western Reference and Bond*

---

**4.** *See* Note, *Fighting Conflicts of Interest in Officialdom: Constitutional and Practical Guidelines for State Financial Disclosure Laws,* 73 Mich.L.Rev. 758 (1975).

*Ass'n,* 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941). This federal court's inquiry ends with the determination that the provision challenged is not arbitrary, but serves the intended purpose in a rational manner. This court is unable to say that Article II, § 8 of the Florida Constitution is not "manifestly the product of an orderly and rational legislative decision." *Whalen v. Roe,* 429 U.S. at 597, 97 S.Ct. at 875, 51 L.Ed.2d at 72.

Even when measured according to the more exacting "balancing test", the Amendment must still be regarded as constitutional. In *Nixon, supra,* the Supreme Court was confronted with the former President's claim that the screening of presidential documents for the purpose of separating Mr. Nixon's personal papers from those documents that belonged to the government violated his right to privacy. The Court held that Mr. Nixon had "a legitimate expectation of privacy in his personal communications." ——— U.S. at ———, 97 S.Ct. at 2801, 53 L.Ed.2d at 905. Nevertheless, his expectation of privacy was necessarily limited by the fact that "when he entered public life he voluntarily surrendered the privacy secured by law for those who elect not to place themselves in the public spotlight." ——— U.S. at ———, 97 S.Ct. at 2796, 53 L.Ed.2d at 900, *citing New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Carefully weighing the merits of the asserted privacy interest "against the public interest in subjecting the Presidential materials of appellant's administration to archival screening", the Court found the statutory screening procedure to be constitutional. Among the factors dictating this conclusion were "appellant's status as a public figure, . . . his lack of any expectation of privacy in the overwhelming majority of the materials, [and] the important public interest in preservation of the materials . . ." ——— U.S. ———, 97 S.Ct. at 2801, 53 L.Ed.2d at 905.

■ *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), also provides guidance as to the factors to be considered in a case of this nature. In *Buckley,* the Supreme Court confirmed the constitutionality of certain provisions of the Federal Election Campaign Act of 1971 that required political committees to keep records of the name and address of each person making a political contribution in excess of $10 and the amount of the contribution given. If contributions from any one person totalled more than $100, the statute required that the donor's occupation and principal place of business also be recorded. This information was to be reported to the Federal Election Commission, and made available by the Commission to the public. These provisions were assailed on the ground that they intruded upon the fundamental privacy of association and belief guaranteed by the First Amendment. The Supreme Court applied the strict test of "exacting scrutiny" traditionally utilized when legislation is found to limit the exercise of First Amendment and other fundamental rights. Nevertheless, it was held that the governmental interests involved were "sufficiently important to outweigh the possibility of infringement". Three such governmental interests served by the requirement of public disclosure were identified: (1) "provid[ing] the electorate with information 'as to where political campaign money comes from and how it is spent by the candidate' in order to aid the voters in evaluating those who seek federal office"; (2) deterrence of corruption and avoidance of "the appearance of corruption"; and (3) detection of campaign law violations. 424 U.S. at 66–68, 96 S.Ct. at 657, (footnote omitted), *quoting* H*R*Rep.No.92–564, p. 4 (1971).

The *Nixon* and *Buckley* decisions provide controlling precedent for the case at bar. As in *Nixon,* the plaintiffs here possess a substantial and legitimate interest in maintaining the privacy of their personal financial affairs. The same countervailing governmental considerations that weighed in favor of disclosure in *Nixon* and *Buckley,* however, are also evident in this case. Like Mr. Nixon, the plaintiffs are public officials who have chosen to divest themselves of a certain degree of the privacy that ordinarily

attaches to persons who have not injected themselves into the public spotlight. Moreover, by arguing that a more narrow disclosure requirement would eliminate their constitutional objections, the plaintiffs concede that they do not have a reasonable expectation of privacy in a substantial portion of the information that the Sunshine Amendment requires to be disclosed.

In addition, the Amendment can serve a panoply of important state interests that are nearly identical to those catalogued in *Buckley*. First, it could safeguard and further what could be termed the voting public's "right to know." [5] It achieves this purpose by giving the electorate detailed information relating to each public official's financial interests and property holdings. Such knowledge "alert[s] the voter to the interests to which a [public officer] is most likely to be responsive". *Buckley*, 424 U.S. at 67, 96 S.Ct. at 657. Second, the Amendment could act as a valuable deterrent to political corruption and conflicts of interest. It may be true, as the plaintiffs insist, that no dishonest public officeholder will voluntarily reveal the receipt of unauthorized funds; however, it is undeniable that the disclosure requirement will tend to discourage those who might otherwise use public office as a means toward improperly enriching themselves, and that it will make corrupt practices even more risky than was previously the case. Third, the Amendment may help to create an atmosphere of trust and confidence between the citizens of the State of Florida and the persons they choose to represent them in government. The disclosure requirement accomplishes this end by seeking to banish the appearance of dishonesty and fostering an awareness on the part of state and county officers of their public duty to govern themselves according to a high ethical standard. *See Buckley, supra*, 424 U.S., at 67, 96 S.Ct. 612;

*United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO*, 413 U.S. 548, 565, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Fourth, disclosure of personal assets and finances assists in the detection and investigation of violations of the law and the disciplining and prosecution of lawbreaking government officials.

While this court cannot say that Article II, § 8 of the Florida Constitution necessarily constitutes the most perfect means of achieving a diminution in political corruption or that it is the wisest choice of means to accomplish that purpose, the vital state interests outlined above are surely ample enough to outweigh the plaintiffs' expectations of financial privacy and to sustain the constitutionality of the Amendment. The Supreme Court of Florida has held, in a case involving a statutory disclosure provision, that, "The State of Florida has a compelling interest in protecting its citizens from abuse of the trust placed in their elected officials . . . ." *Goldtrap v. Askew*, 334 So.2d 20, 22 (Fla.1976). Although *Goldtrap's* characterization of the state's interest as "compelling" is not binding on the federal courts, it does illustrate the great concern of the State of Florida in guaranteeing the honesty of its public officials—a concern this court may properly recognize and should not lightly ignore.

Finally, there is one additional consideration that makes dismissal proper at this stage. Appeals of state court decisions upholding the constitutionality of financial disclosure laws against the contention that they impermissibly infringed upon privacy rights have on three separate occasions been dismissed by the United States Supreme Court for lack of a substantial federal question.[6] According to *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), a vote to dismiss for want of a substantial federal question is a vote on the merits of a case. When the Supreme Court

---

**5.** "[I]nformed public opinion is the most potent of all restraints upon misgovernment". *Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936).

**6.** *Stein v. Howlett*, 52 Ill.2d 570, 289 N.E.2d 409 (1972), *appeal dismissed*, 412 U.S. 925, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973); *Montgomery*

*County v. Walsh*, 274 Md. 502, 336 A.2d 97 (1975), *appeal dismissed*, 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976); *Fritz v. Gorton*, 83 Wash.2d 275, 517 P.2d 911 (1974), *appeal dismissed*, 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

has " 'branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise' " or until the Supreme Court instructs the lower courts to the contrary. *Hicks, supra,* at 344, 95 S.Ct. at 2289, *quoting Port Authority Bondholders Protective Committee v. Port of New York Authority,* 387 F.2d 259, 263 n. 3 (2d Cir. 1967). The dismissals by the Supreme Court of appeals challenging other financial disclosure laws are not decisive as to the issues raised in the instant case, of course, since the provisions of the statutes involved differed from those found in Article II, § 8 of the Florida Constitution. *Hicks, supra,* 422 U.S. at 344, n. 14, 95 S.Ct. 2281. The summary disposition given those cases on their merits by the United States Supreme Court, however, reveals the lack of substance in the arguments pressed upon this court by the plaintiffs.

## ORDER

It appearing to a certainty that the plaintiffs cannot prevail under any state of facts which could be proved in support of their claims, it is

ORDERED that the defendants' motions to dismiss are granted, and the plaintiffs' complaints in support of a declaratory judgment are hereby dismissed with prejudice.

DONE AND ORDERED this 14th day of September, 1977.