238 So.2d 551

DIXIE DAIRIES—Dairy Fresh Corporation

v.

ALABAMA STATE MILK CONTROL BOARD and E. E. Donovan, Joe Hall, Harold Harris, Roger Norris and Douglas McBryde, Intervenors.

3 Div. 367.

Supreme Court of Alabama.

Aug. 6, 1970.

Sol E. Brinsfield, Jr., Montgomery, for appellant.

Rushton, Stakely, Johnston & Garrett and Louis G. Greene, Montgomery, for appellees.

LIVINGSTON, Chief Justice.

Appellant appeals from a final judgment of the Circuit Court of Montgomery County which sustained the action of the Alabama State Milk Control Board in denying appellant's petition to discontinue receiving milk from producer-licensee, E. E. Donovan, after the expiration of an established quota period.

The record does not show what date the petition was filed, but a certificate shows that a copy was mailed to the producer, E. E. Donovan, on July 21, 1967. A hearing was held before the Milk Board on August 21, 1967, and a denial of the petition was entered on August 25, 1967.

After the Milk Board's denial of the petition, appellant, on August 31, 1967, filed its petition in the Circuit Court of Montgomery County for a writ of certiorari and declaratory judgment. The petition for certiorari was directed to the Alabama State Milk Control Board. Appellant, on November 10, 1967, amended paragraphs 8 and 11 of the petition, also the whole bill, by alleging that the action of the Board was in violation of the due process clauses of the United States Constitution and of the Alabama Constitution. Also the amendment alleged that the Board was illegally constituted and acted without authority in denying the petition.

Appellant's contention is that the Board was not constituted as required by Title 22, Sections 206, 207 and 207(1), Code of Alabama 1940, as Recompiled in 1958. An amendatory statute was approved by the Governor on August 19, 1965, and by its terms became effective on February 1, 1967. The amended petition also avers "that there exists between your petitioner and the Alabama State Milk Control Board a justiciable controversy relative to the legal status and composition of the Board and its membership, and, the right of the Board to exercise supervision over your petitioner which should be resolved by this Court under the provisions of Title 7, Sections 156–168 of the Code of Alabama of 1940, since said Board, as then constituted, did attempt to exercise the functions of the Alabama State Milk Control Board by enacting and promulgating Letter Order dated August 25, 1967, without authority of law; that the statute under which the membership of the Board was appointed has been repealed and superseded by the provisions of Sections 207 and 207(1) of Title 22 of the Code of Alabama of 1940, as amended, which became effective in February of 1967." The amendments were allowed by order of the Circuit Court, which order is not here challenged.

After the foregoing writ was filed and amended, E. E. Donovan et al. filed a petition for leave to intervene and for all other producer-licensees of Alabama. Leave to intervene was granted on November 28, 1967. Answers denying the allegations in paragraphs 1 to 11, inclusive, were duly filed. The Milk Board also filed an answer.

The pleadings present an issue respecting the right of the Milk Board to sit in judgment on the petition.

The legislature by Act No. 497, General Acts 1961, amended Sections 206, 207, 208,

213, 214, 215, 217, 221, 222, 223 and 224, Title 22, Code 1940 (formerly appearing in Act No. 164, General Acts 1939, p. 267), 1958 Recompiled Code, 1969 Cum. Pocket Part.

Sections 207, 208, supra, as amended, and Section 218, Title 22, Code 1940, were amended by Act No. 466, Gen. Acts 1965, p. 665. This amendatory act, although approved on August 19, 1965, by its terms did not become effective until February 1, 1967.

We note that the legislature further amended Title 22, Code 1940, Section 207 as amended. See Act No. 426, Gen. Acts 1967, p. 1096. This act was made retroactive to January 31, 1967, although approved on September 7, 1967.

Neither of these amendatory acts, supra, repealed the provisions in Section 207, supra, establishing the Alabama State Milk Control Board.

Section 207, Title 22, Code 1940, provided for a five-member board, with provision that they be appointed by the Governor and serve at his pleasure. This section prescribed certain qualifications for the members.

Act No. 466, supra (passed in 1965, effective February 1, 1967) expanded the Board's membership from five members to six, with staggered terms. Also, the act prescribed certain qualifications for each member. As were their predecessors, each of the six members was to be appointed by the Governor and serve during good behavior, unless a member shall have become incapacitated, etc.

Section 207, supra, Code 1940, Recompiled in 1958, prescribed qualifications of the five members as follows: "One person, who is a 'wholesale producer,' one person, who is a 'producer-distributor,' one person, who is a 'distributor,' one person, who is a 'consumer,' and who is not otherwise engaged in the milk business. One person as a member at large, which said person must not be engaged in the production, distribution, or sale of milk in any manner."

Act No. 466, 1965 Acts, Vol. 1, p. 665, Title 22, Section 207, 1958 Recompiled Code, 1969 Cum. Pocket Part, expanding the membership of the Board to six, prescribed qualifications as follows: "Two persons who are 'wholesale producers,' two persons who are 'distributors,' two persons who are 'consumers,' and who are not otherwise engaged in the milk business."

Neither of the five-member Board, who sat in judgment on the instant case, had been removed from office nor had either been supplanted by appointment of another, pursuant to authority contained in Act No. 446, supra, effective February 1, 1967. When the Board sat in judgment on the petition of appellants, the members did so without objection or complaint by appellant. No question was raised at that time as to the eligibility of the Board to hear the case.

We observed in Ex parte Register, 257 Ala. 408, 60 So.2d 41(10), that "A *de facto* officer is one who exercises the duties of a *de jure* office under color of appointment or election, and his official acts are valid. Heath v. State, 36 Ala. 273." See also Coe v. City of Dothan, 19 Ala.App. 33, 94 So. 186(1).

■ Although the legislature at the time the Board sat in judgment had passed an act providing for a six-member Board, the appointments to office authorized had not been made. The five members of the Board continued to act under their original appointments. They lawfully sat in judgment as de facto officers and Board members.

The next question is whether or not the order denying appellant's petition to discontinue purchasing milk from Mr. Donovan violated appellant's constitutional rights guaranteed by the federal and our state constitutions, supra. In other words, is appellant being deprived of his property or being denied rights without due process of law.

■■ In the first place, appellant was charged with knowledge of the law creating the Milk Control Board, its duties, authority and responsibilities when it elected to go into the processing and distribution of milk for, and to, the public. The pioneer statute (Act No. 163, Gen. Acts 1935, p. 204, repealed by Act No. 164 in 1939) creating a milk control board for a limited time, with power to designate natural marketing areas constituting respective milk sheds and to fix the minimum and maximum prices therein, was not in violation of the 5th and 14th Amendments of the Federal Constitution. Such statute was held not an unconstitutional delegation of judicial power, nor of legislative authority to fix prices, milk sheds and rules and regulations. Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Taylor v. State ex rel. Alabama State Milk Control Board, 237 Ala. 178, 186 So. 463; State of Alabama v. Dixie Dairies Corp., 268 Ala. 480, 107 So.2d 896.

Section 205, Title 22, Code 1940, Recompiled in 1958 (formerly Sec. 1, Act 164, Gen. Acts 1939, p. 267), declares "that milk is a necessary article of food for human consumption; that the production and maintenance of an adequate supply of healthful milk of proper chemical and physical content, free from contamination, is vital to the public health and welfare, and that the production, transportation, processing, storage, distribution and sale of milk, in the state of Alabama, is an industry affecting the public health and interest; * * *."

The Milk Control Board (Sec. 210, Title 22, Code 1940, Recompiled in 1958) was vested with the powers and the duty imposed upon it to supervise and regulate the fluid milk industry of the State of Alabama, including the production, distribution, transportation, manufacturing, storage, delivery, processing and sale of milk in the State of Alabama.

Section 211, Title 22, Code 1940, Recompiled in 1958, authorizes the Board to adopt and enforce all rules and all orders necessary to carry out the provisions of "this chapter."

The Board, on December 10, 1953, adopted Rule IX as follows:

"No Distributor or Producer-Distributor may discontinue the purchase of a producer's milk, except when such producer is degraded by the Health Department, without first securing the consent of the Board or its authorized representative. Any distributor or producer-distributor shall have the right to petition the Board to allow such distributor or producer-distributor to discontinue receiving milk from any wholesale producer. Every such petition shall contain a clear and complete statement of the grounds relied upon by the petitioner. In the event of the filing of such a petition by a distributor or producer-distributor, a copy of the petition shall be served upon each wholesale producer licensee affected by registered mail, return receipt requested. All parties shall be notified of the petition, and the Board may in its discretion, set the matter down for a hearing which in no event shall be more than thirty days from the date of the filing of the petition. This Rule will not serve to invalidate any written contracts between two parties, provided such contracts are in conformity with rules and orders of the Board and are on file in the Board's office."

The Board also adopted Rule X which forbids the producer or producer-distributor from discontinuing the sale of his milk to a distributor or producer-distributor. The Rule requires notice and empowers the Board to prevent such discontinuance. The essence of the Rule is to protect the Distributor from discontinuance of his supply which, in the judgment of the Board, could create a shortage of fluid milk in any market.

■ So we observe that the Board, in its effort to protect both the producer and the

distributor against any abrupt or arbitrary discontinuance of wholesale milk traffic, has adopted rules to regulate milk transactions between the distributor and the producer. We think these rules are well within the powers of the Board and do not violate any federal or state due process clause when these rules are fairly and reasonably administered.

We have said that the business of producing and selling milk to the general public is subject to the exercise of the police power, regulation and control, even to the extent of fixing prices. Franklin v. State, supra; Taylor v. State, supra.

We are here concerned with a situation that affects the production of milk. Mr. Donovan, who has intervened in this proceeding, and who is vitally interested in the result, is a producer who has spent many years in building up a herd of milk cows, actual and potential, numbering about 1800 head. He owns and rents 5000 to 6000 acres of land, primarily used in milk production. The value of his investment is around $800,000.00.

Mr. Donovan has been selling his milk exclusively to appellant since about 1955, and during that period has established a quota with appellant that equals about 10% of the milk which appellant receives from all its producers. It further appears that Mr. Donovan delivers to appellant between 5000 and 6000 gallons of milk every other day.

■ If either the producer or distributor is allowed to jump about from one customer to another without just and lawful reason therefor, without sanction or approval of the Milk Control Board, reasonably exercised, such practices could, and probably would, lead to disruptive enervation or impotency of the statutory milk control structure which is dependent on a continuity of trade between the producer and distributor. The maintenance of the quota system is quite dependent on such contin-

uity. Such cornerstone should not be arbitrarily or freely disturbed without a fair, just and lawful reason therefor. The Milk Board has the power and authority to fix and determine the quality of milk standards, including the butterfat content. If the distributor is allowed to fix his own minimum standards, free of any control or supervision of the Board, such fixation by the distributor could be used as a means of discontinuing business relations with a producer at the whim, whether reasonable or unreasonable, of the distributor. The producer would be left to the mercy of the distributor. Likewise, if the producer is allowed to fix his own butterfat content, without approval or disapproval of the Board, reasonably exercised, the distributor would be left to the mercy of the producer and be required to buy milk below reasonable standards. We think that the Board's power to approve or disapprove of such discontinuance of buying and selling milk between the producer and distributor is essential to the objectives of the milk board legislation.

Appellant contends that the milk produced by intervenor Donovan and delivered fails to meet its standard of butterfat content of 3.8%; that the test of milk delivered runs from 3.3% to 3.4%, and on occasions 3.5%; that it has to add butterfat to Donovan's milk to meet its own standards fixed at 3.8% of butterfat.

Donovan contends, however, that appellant made no complaints until he started delivering his own milk to appellant at considerably less expense than he was paying appellant for such pickup and delivery. Donovan claims that he was paying appellant 68¢ or 70¢ per hundredweight while he could profitably deliver such milk at about 40¢ per hundredweight. Whether this contention is relevant to the issues, we are not called upon to decide, but nevertheless, Donovan contends that this loss of revenue by appellant motivated appellant's efforts to be relieved of his business relationship with him.

We are not convinced that the Milk Control Board acted arbitrarily, without just cause, in denying the discontinuance. It does not appear from the evidence that the failure of the delivered milk to reach 3.8% butterfat is detrimental to public health and welfare, although such content may be a good sales point for appellant in disposing of its product.

We do not say that such minimum standard of butterfat might not be considered by the Milk Control Board and result in an order of that body which would require Donovan to meet. We do not want to substitute our judgment for that of the Board unless it is shown that the Board was unreasonable or arbitrary. We are not here called upon to decide that point. The Board in the instant case has not undertaken to fix a standard or minimum butterfat content. The Board has the authority in the exercise of wise and reasonable discretion to fix standards and to supervise the business relationship between the producer and the distributor, to the end that the public may be provided an adequate supply of healthful milk. When the butterfat drops below the level that is vital to public health and welfare, judicial interference might be invoked, but no such condition is shown by this record to obtain.

We think that Rule IX, supra, and incidentally Rule X, mentioned supra, is reasonable, fair and just, and within the power of the Milk Control Board to adopt. These rules lend protection to both the producer and distributor and seek to preserve a continuity of business relationship, and to prevent destructive and unfair practice that could impede or undermine profitable production and distribution of healthful milk. Both the producer and the distributor must have reasonable profit to stay in business. The Milk Control Board is authorized to function with wide latitude to carry out and preserve the policy of this State as expressed in Section 205, Title 22, supra.

In adopting Rule IX, and incidentally Rule X, supra, we do not think the Milk Control Board exceeded the bounds of reason or has manifested an arbitrary usurpation of power that violates due process clauses of either our state or federal constitutions. We are unwilling to disturb the judgment of the trial court in any of its facets here attacked. There is no merit in any of the argued assignments of error.

The judgment of the trial court is affirmed.

Affirmed.

SIMPSON, COLEMAN, BLOODWORTH and McCALL, JJ., concur.