**William J. BAXLEY, Attorney General of the State of Alabama, et al., Plaintiffs,**

v.

**ALABAMA DAIRY COMMISSION,** an agency of the State of Alabama, et al., Defendants,

Associated Milk Producers, Inc., et al., Intervenors.

Civ. A. No. 3176–N.

United States District Court,
M. D. Alabama, N. D.

July 12, 1973.

------◆------

William J. Baxley, Atty. Gen., and George Beck, Deputy Atty. Gen., Montgomery, Ala., for plaintiff William J. Baxley.

Bert Nettles, Mobile, Ala., and Euel A. Screws, Jr. (Hobbs, Copeland, Franco & Screws), Montgomery, Ala., for plaintiffs Delchamps, Inc., and Stephen McDonnell.

Fred C. Folsom, Cullman, Ala., for the defendants.

Charles A. Stakely, Jr. (Rushton, Stakely, Johnston & Garrett), Montgomery, Ala., for intervenor Associated Milk Producers, Inc.

Sol E. Brinsfield, Jr., and Curtis H. Springer, Montgomery, Ala., for the other intervenors.

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

JOHNSON, District Judge:

This action was originally brought by a milk retailer and a consumer against the Alabama Milk Control Board and the Attorney General of Alabama [hereinafter the Attorney General], challenging the constitutionality of the Milk Control Board Act on the ground that the Act and the price fixing policies through which it was administered were unreasonable and arbitrary and, as such, a violation of the Due Process Clause of the Fourteenth Amendment. The thrust of plaintiffs' complaint was that conditions had so changed since the Alabama Milk Control Board Act was enacted that the continued fixing of milk prices constituted an arbitrary exercise of the police power, in that prices had been fixed at a level deemed necessary to keep inefficient milk distributors in business, forcing the retailer and consumer to subsidize the operation of the inefficient distributors and underwrite the excessive profits of the efficient distributor.

Milk distributors and producers were granted leave to intervene as defendants, and plaintiffs were granted leave to amend their complaint so as to challenge the structure and composition of the Board. The Attorney General's motion to be realigned as a plaintiff was granted, and the case was continued, pending action of the Legislature.

In its 1971 regular session, the Alabama Legislature amended the laws of Alabama regulating the fluid milk industry, changing the name of the Board to the Alabama Dairy Commission and changing the composition of the Commission. Plaintiffs were granted leave to further amend their complaint so as to challenge the new law, Act No. 408, on grounds stated in plaintiffs' original complaint and on the additional ground, advanced by the Attorney General alone, that the new act and the rules and regulations promulgated thereunder constitute a direct burden on interstate commerce by discriminating against out-of-state milk producers. Thereafter the Dairy Commission adopted Order 2–72–1 correcting those matters alleged in the amended complaint to constitute unequal treatment of out-of-state producers.

By pretrial order, the issues deemed submitted to the Court are four:

(1) Whether the retail and wholesale price fixing of milk as provided by the Alabama Dairy Commission Act is ca-

pricious, arbitrary, discriminating and unreasonable, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment;

(2) Whether the acts of the Alabama Dairy Commission in administering retail and wholesale price fixing are discriminatory, arbitrary and unreasonable in violation of the Fourteenth Amendment;

(3) Whether the Alabama Dairy Commission Act constitutes an improper delegation of legislative authority; and

(4) Whether the Act and the rules and regulations adopted pursuant thereto, place a burden on interstate commerce in violation of the Commerce Clause.

The case is now submitted upon the depositions, stipulations and the briefs of the parties.

## I. DUE PROCESS CLAIMS

■ Indicative of the weight to be given plaintiffs' due process challenges to Alabama's regulatory scheme is the Supreme Court's treatment of similar claims in Polar Ice Cream & Creamery Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964). While reversing a lower court holding that a state regulatory scheme did not impose an unreasonable burden on interstate commerce, the Court in *Polar Ice Cream* relegated to a footnote its dismissal of the due process challenge to the regulatory scheme, noting merely that the claims "appear on their face to be without merit . . ." 375 U.S. at 370 n. 7, 84 S.Ct. at 384. These claims, as the lower court opinion in *Polar Ice Cream* reveals, see 208 F.Supp. 899 (N.D.Fla. 1962), included many of the same objections presently before this Court. Because plaintiffs press their due process claims so earnestly, however, it is appropriate to spell out in detail why each of their claims, in light of intervening legislative and administrative revision of Alabama's regulatory scheme, is without merit.

### A. Challenge to the Statute Itself

In pressing their due process claims as to the constitutionality of the statute itself, plaintiffs in effect ask this Court to re-enter a constitutional thicket which was abandoned by federal courts over three decades ago—that of substantive due process in economic regulation. The suggested point of re-entry, ironically enough, is through the same case which originally signaled judicial abandonment of the field. In Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), the Supreme Court, forsaking its earlier test for determining whether a business could, consistent with due process, be subjected to economic regulation, held that

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, . . ."

As for price fixing specifically, the Court said that it, like any other form of regulation, "is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty." 291 U.S. at 504, 54 S.Ct. at 517.

Since *Nebbia*, the Court has consistently adhered to a laissez faire attitude toward state economic and social legislation. Indeed, to the extent that *Nebbia* left open the possibility of judicial review of regulatory schemes claimed to be unreasonable, the *Nebbia* decision itself can be said to have been narrowed, and perhaps altogether undermined, by subsequent decisions. In Olsen v. Ne-

braska ex rel. Western Ref. Bond Ass'n, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1940), for example, the Court, through Mr. Justice Douglas, unanimously rejected an argument that certain legislation should be struck down for lack of any conditions which the legislature might reasonably believe would redound to the public injury unless corrected by such legislation. The Court's opinion appears to have equated that argument with questioning the wisdom, need or appropriateness of the legislation, and rejected such inquiry as inappropriate. The Court went on to say that:

"There is no necessity for the state to demonstrate before us that evils persist . . . In final analysis, the only constitutional prohibitions or restraints which respondents have suggested for the invalidation of this legislation are those notions of public policy embedded in earlier decisions of this Court but which, as Mr. Justice Holmes long admonished, should not be read into the Constitution."

Similarly, in Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949), the Court, through Mr. Justice Black, stated that, beginning with Nebbia, the Court has returned "closer and closer to the earlier constitutional principle that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law." In Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), the Court indicated that while "there was a time when the Due Process Clause was used by the Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy . . . [t]he doctrine . . . that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded." 372 U.S. 729–730, 83 S.Ct. 1030–1031.

To the extent that the Nebbia "reasonableness" test does survive, it is clear that the test is exceedingly narrow and that in drawing legislative judgment into question, a court must restrict its inquiry to the issue of whether any state of facts either known or which could reasonably be assumed affords support for that legislative judgment.[1] See United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). As the Court in Olsen remarks, there is no necessity for the state to demonstrate that evils persist. Rather, the party challenging the legislation bears the heavy burden of establishing the complete absence of any state of facts which the legislature might reasonably believe would redound to the public injury unless regulated.

In attempting to demonstrate a change of circumstances rendering Alabama's statute invalid, the plaintiffs would have this Court take judicial notice of the fact that there have been no recent milk strikes, bombings or bloodshed such as characterized the milk market in the 1930's. Yet, this misses the point. The question is whether the recurrence of such conditions could reasonably be assumed by the legislature. Plaintiffs have not met their burden of establishing the complete absence of such conditions and the complete unlikelihood of their recurrence.[2]

The remainder of plaintiffs' argument, while masquerading in the guise of an attack on the regulatory scheme's relation to legislative purpose, amounts to no more than questioning the wisdom of a regulatory scheme which results in higher milk prices in the state's public

1. Note the similiarity between this due process test and the "old" equal protection standard for reviewing the reasonableness of legislative classifications. See generally 82 Harv.L.Rev. 1065 (1969).

2. Evidence was introduced to show that in Georgia, an uncontrolled state, prices are much higher than in Alabama and producers are being driven out of business.

schools and public institutions. These consequences, however, are not the result of price fixing per se, but of the particular pricing policy of the Dairy Commission. The operation and effect of the Dairy Commission Act as administered by the Dairy Commission, is a distinct, though equally meritless, constitutional issue, which requires separate treatment.

### B. Operation and Effect of the Scheme of Regulation

■ ■ Intermingled with plaintiffs' argument that the statute itself constitutes an arbitrary and unreasonable exercise of legislative power is the argument that the statutory scheme of regulation is arbitrary in its operation and effect. These arguments reduce to the contention that the effect of the Commission's price fixing on school and institutional milk bills indicates that, contrary to legislative intent, the regulatory scheme is inhibiting an adequate supply of milk to the consumer. In addition, plaintiffs separately cite two other examples of allegedly arbitrary and capricious agency action. First, they point to purportedly inadequate cost studies as the only basis for the Commission's raising of milk prices. Second, they point to the Commission's failure to set out any natural marketing areas other than the State as a whole.

The effect of price fixing on school and institutional milk costs, of course, has little to do with whether the scheme assures or inhibits an adequate supply of milk. Plaintiffs merely use this legislative purpose as a back door method of attacking the wisdom of the regulatory scheme. Arguments of this sort should be directed to the Alabama Legislature, not to a federal court. As for the two additional examples of arbitrary and capricious agency action, it is to be noted that both cost studies and natural marketing areas are required by the Dairy Commission Act itself. Thus, plaintiffs' due process claim reduces to no more than a request that this Court police the manner in which the defend-

ant state agency performs its duties under state law. Both the United States Supreme Court and the Fifth Circuit have held that mere violations of state law do not amount to a federal due process violation. Alabama Public Service Comm'n v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Simmons v. Jones, 478 F.2d 321 (5th Cir. 1973). Absent the involvement of a federal constitutional right, the right to have state laws obeyed is a state, not a federal matter. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Simmons v. Jones, *supra.* Thus, state courts are the proper forum for complaints regarding the adequacy of cost studies and natural marketing areas required by state law.

### II. EQUAL PROTECTION CLAIMS

■ Plaintiffs' equal protection claims hardly amount to a serious challenge to the constitutionality of the Dairy Commission Act. Only the Attorney General devotes any attention to the contention that the statute is violative of equal protection, and his claims amount to no more than conclusory charges that the statute discriminates against non-military consumers, new producers and retailers.

The test to be applied, as with the *Nebbia* due process test of arbitrariness, is whether there is any state of facts which could reasonably support any distinctions drawn by the legislature. Yet even before this test is applied there are certain standing and ripeness requirements which must be met. Further, it must be shown that the statute under attack actually draws the distinction complained of. The difference in the price of military and non-military milk, for example, is due to the fact that military milk prices are not subject to Dairy Commission regulation and are the result of large scale competitive bids. The State of Alabama is under no obligation to meet the milk prices charged on military bases. Thus, it could hardly be said that the *statute* discriminates against non-military consumers. One

might just as easily argue that the military bases are the source of the discrimination. As for the new producer (who, contrary to the impression the Attorney General attempts to create, is not necessarily an out-of-state producer) there is some question as to the propriety of litigating his rights. No prospective producer is a party to this case, and the contention was not raised until after the pretrial of the case, and after the Dairy Commission amended its regulations so as to cure the Attorney General's original interstate commerce claim. Finally, as to alleged discrimination against the retailer, it is curious that the retailer who originally brought this suit has nowhere articulated an equal protection claim of the sort advanced by the Attorney General in the retailers' behalf. Briefly stated, the Attorney General contends that the statute discriminates against retailers in that retailers are not given the same powers under the statute as producers and distributors. Specifically, the Attorney General refers to the power of producers and distributors to petition for establishment of and changes in natural marketing areas. See Alabama Code, Title 22, § 209, as amended. Yet the Attorney General's argument is largely conclusory, and no supporting evidence has been presented. Thus, we conclude that the evidence before us is insufficient to support a holding that the challenged statutory provision constitutes a denial of equal protection.

### III. DELEGATION OF LEGISLATIVE POWER

■ Plaintiffs also contend that the Alabama Dairy Commission Act is an unconstitutional delegation of legislative power. This objection has been held to have no basis under the Federal Constitution. Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937); Dixie Dairies v. Alabama State Milk Control Board, 286 Ala. 198, 238 So.2d 551 (1970). Likewise, as to the State Constitution, the question was decided adversely to plaintiffs in Franklin v. State, 232 Ala. 637, 169 So. 295 (1936), and was apparently reaffirmed in *Dixie Dairies, supra.*

### IV. BURDEN ON INTERSTATE COMMERCE

The Attorney General concedes that the original basis for this claim was resolved in the Dairy Commission's Order 2–72–1, which did away with a requirement that Alabama distributors purchase their needs from Alabama sources until Alabama sources were exhausted. The basis for the Attorney General's renewal of the interstate commerce claim amounts to no more than a restatement of his due process objections to the fixing of milk prices.

■ It is well settled that a state's regulation of its milk industry does not per se constitute a burden on interstate commerce. See Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939); Highland Farms Dairy v. Agnew, 300 U. S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937). Even though Congress has paramount authority in the regulation of interstate commerce, the states remain free to act within their respective jurisdictions until Congress sees fit to exercise its overriding authority. State statutes will necessarily affect interstate commerce in some degree, but such a statute does not run counter to the grant of Congressional power merely because it incidentally or indirectly involves interstate commerce. *Eisenberg, supra.* In *Eisenberg* the Court held that a state plan of regulation which required the payment of minimum prices to producers did not constitute an undue burden on interstate commerce, even as applied to a dealer whose purchases were all shipped to another state. The Court distinguished cases involving state laws directed solely at foreign commerce, see DiSanto v. Pennsylvania, 273 U.S. 34, 47 S.Ct. 267, 71 L.Ed. 524 (1927), or at affecting and regulating the price to be paid for milk in a sister state, Baldwin v. Seelig, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935).

In the instant case, the Attorney General claims that the Alabama statute places a burden on interstate commerce both at the producer and at the wholesaler-retailer levels. Neither claim has any merit. At the production level, the Attorney General's actual complaint is that the Dairy Commission's regulations inhibit the entry of *new* producers—whether from Alabama or out of state—and favor both Alabama producers and certain regular out-of-state producers. This constitutes an entirely new issue, which has not heretofore been advanced in this case, and which appears to have little to do with interstate commerce. For these reasons and the additional reasons stated in Part II of this opinion, this case would not appear to be an appropriate vehicle for adjudicating the rights of the new producer.

The Attorney General's complaint at the wholesaler-retailer level is that, even though foreign milk may be purchased at its source at a negotiated price, it must be purchased outside the state and transported into Alabama at the retailer's expense in order to avoid the wholesale prices fixed by the Dairy Commission. In addition, the Attorney General complains that the retailer must charge the retail price fixed by the Commission regardless of the wholesale source and price of the milk retailed.

The restrictions complained of, however, are but the converse of those permitted in *Eisenberg*. In *Eisenberg* a state was allowed to set the price at which a distributor *bought* milk from in-state producers, even though all the milk was being transported out of state. In the present case, the Attorney General would have this Court strike down, as a burden on interstate commerce, state regulations requiring out-of-state distributors and in-state retailers to sell at prices fixed by the Dairy Commission for all sales within the state. There appears to be no significant difference between the regulation permitted to stand in *Eisenberg* and the present regulatory scheme which the Attorney General would have this Court strike down. For

that reason, *Eisenberg* should be deemed to be controlling, and the Attorney General's contention dismissed as without merit.

### V. CONCLUSION

For the foregoing reasons, it appears that plaintiffs' attack on the statute must fail. The Due Process Clause is simply an inadequate vehicle for attacking the substance of economic regulation; the equal protection arguments advanced in the case are far too skimpy to provide a basis for striking down any provision of the statute; the delegation of legislative powers argument is wholly without merit; and the mere regulation of milk prices has been held not to constitute an undue burden on interstate commerce.

Judgment will be entered accordingly.