Appellant Alabama Dairy Commission appeals from a final judgment holding, inter alia, that: (1) appellant, by virtue of its unconstitutional administration and application of Tit. 22, §§ 205-231, Code of Alabama 1940,[1] (Alabama Dairy Commission Act), is permanently enjoined from exercising any powers granted to it in said Act pertaining to price fixing of fluid milk at the producer, wholesale, and retail levels; (2) appellant is permanently enjoined from setting prices of fluid milk at the wholesale and retail levels because the wholesale and retail sale of fluid milk is not a business so affected with the public interest as to warrant price fixing, and such attempt by the legislature violates both the State and Federal Constitutions; (3) appellant's power to fix prices, contained in Tit. 22, §§ 223-223 (1), Code, rests on such vague generalities that it constitutes an unconstitutional delegation of legislative authority in violation of the due process clause of the State Constitution; and (4) enforcement of the Alabama Dairy Commission Act works an unconstitutional burden on interstate commerce because it discriminates against out-of-state producers by relegating them to a secondary milk market and obstructs the free flow of milk across state lines. We reverse and remand.
Appellant instituted this action on December 9, 1976, by filing a complaint, seeking a temporary restraining order and a preliminary and permanent injunction against appellee, Food Giant, Inc., for selling and offering to sell fluid milk in violation of Dairy Commission Regulation 115-1. This regulation, which was passed by the Dairy Commission, pursuant to the Act, and went into effect on September 1, 1976, fixed the minimum price for retail out-of-store sales of homogenized milk at $1.74 per gallon.
The Circuit Court, after notice to appellee, Food Giant, Inc., entered the temporary restraining order, ex parte, and set a hearing for the application for a preliminary injunction for December 13, 1976. Food Giant then filed a motion to hold the temporary restraining order in abeyance, pending a hearing on its motion, and on appellant's application for preliminary injunction, which motion was granted, pending the December 13 hearing. On December 10, 1976, appellant filed a first amended complaint, adding a party as a defendant. Subsequently, three more parties were added as defendants.
At the December 13, 1976, hearing, Food Giant filed an answer and counterclaim and a motion for continuance, which motion was granted, and the cause was continued until December 28, 1976, in order to allow service of the counterclaim on the Attorney General of Alabama. On December 22, 1976, the court entered an order continuing the case until January 10, 1977. *Page 141 
On January 6, 1977, appellant filed a request for a pretrial conference, interrogatories, a request for the production of documents, a motion to shorten time to answer interrogatories, and a motion for a continuance. These motions were denied. On that same date, the Attorney General intervened on behalf of the appellees and filed his answer and counterclaim.
On January 10, 1977, the trial commenced, ore tenus. Also, on January 10, 1977, appellant rescinded Regulation 115-1, and removed minimum price controls, effective immediately. Appellees, on January 11, 1977, moved to dismiss appellant's complaint and application for preliminary injunction, due to appellant's action. The Circuit Court granted appellee's motion to dismiss appellant's complaint, and the case proceeded to trial on appellees' counterclaim.
On March 3, 1977, final judgment was entered containing the findings enumerated above.
Appellant filed a motion for new trial, which was subsequently withdrawn, and notice of appeal. A stay order was entered by the Circuit Court on March 6, 1977, and dissolved on April 7, 1977. A new motion for stay was also denied. Appellant's motion for stay, filed in this Court, was granted on April 12, 1977.
Appellant makes a number of contentions on appeal, including the contentions (1) that the trial court erred in holding that the legislative grant of authority to regulate prices, contained in the Act, constitutes an unauthorized delegation of legislative power in violation of the due process clause of the State Constitution; (2) that the trial court erred in holding that appellant is permanently enjoined from setting prices at the producer, wholesale and retail levels, due to its unconstitutional administration and application of the Act, and in holding that the legislature's attempt to set prices at the wholesale and retail levels violates both the State and Federal Constitutions, because the wholesale and retail sale of fluid milk is not a business so affected with the public interest as to warrant price fixing; and (3) that the trial court erred in holding that the Alabama Dairy Commission Act and the regulations promulgated pursuant thereto place an unconstitutional burden on interstate commerce.
We agree with appellant and therefore reverse and remand.
We shall consider these contentions seriatim.
I. UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER
In Norton v. Lusk, 248 Ala. 110, 26 So.2d 849 (1946), this Court made the following observations, which we think are pertinent here, viz:
 "This court in the case of Porter Coal Co. v. Davis, 231 Ala. 359, 362, 165 So. 93, in discussing the proposition, took occasion to notice approval of a statement by the United States Supreme Court, which we reassert as appropriate here: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside the halls of legislation. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 484, 55 L.Ed. 563; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294."
At the time the original Alabama Dairy Commission Act was passed, the argument that it constituted an unconstitutional delegation of legislative power in violation of the due process clause of our State Constitution was pressed upon this Court and summarily rejected, viz:
 "It is also contended that the act violates section 44 of the Constitution of Alabama, in that it attempts to confer legislative authority upon the milk control *Page 142 
board to fix prices, milk sheds, and rules and regulations. This contention is likewise without merit. (Citations omitted.)"
Franklin v. State ex rel. Alabama State Milk Control Board,232 Ala. 637, 169 So. 295 (1936).
More recently, this holding was cited with approval in DixieDairies v. Alabama State Milk Control Board, 286 Ala. 198,238 So.2d 551 (1970), as well as in Baxley v. Alabama DairyCommission, 360 F. Supp. 1159 (M.D.Ala. 1970), by a three judge federal panel.
Appellees have failed to advance sufficient persuasive argument to convince us that Franklin, Dixie Dairies, andBaxley were decided incorrectly. This is particularly true since this Court presumes that statutes are constitutional, and we will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. Crabtree v.City of Birmingham, 292 Ala. 684, 299 So.2d 282 (1974);Johnston v. Alabama Public Service Commission, 287 Ala. 417,252 So.2d 75 (1971).
 "This Court has often stated the principles by which it is guided in determining the constitutionality of a legislative act. In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944), Chief Justice Gardner summarized this State's law:
 `Uniformly, the courts recognize that this power [to strike down a legislative act as violative of the constitution] is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.
. . . . . .
 `Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom.'
 "We reaffirm the foregoing statement to be the law of this jurisdiction. In determining the constitutionality of a legislative act, we will not look to its propriety. Rather, we will determine whether it is expressly prohibited by the Constitution itself or is violative of those fundamental rights constitutionally guaranteed (e.g., equal protection and due process)." [Emphasis supplied.]
Crabtree v. City of Birmingham, supra.
 II. DUE PROCESS CLAIMS A. State Constitution "Under its police power, the State of Alabama is authorized to enact laws designed to protect the health of its citizens and more particularly where milk is concerned because of its nutritional *Page 143 
importance to human beings and because of its susceptibility to contamination. Franklin v. State, 232 Ala. 637, 169 So. 295; Taylor v. State, 237 Ala. 178, 186 So. 463."
James v. Todd, 267 Ala. 495, 103 So.2d 19 (1957).
 ". . . The validity of a police regulation, therefore, primarily depends on whether, under all the existing circumstances, the regulation is reasonable, and whether it is really designed to accomplish a purpose properly falling within the scope of the police power. Mutual Loan Co. v. Martell, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175
(1911). A regulation, and the administration thereof, is deemed reasonable where, although perhaps not the wisest and best that might be adopted, it is fit and appropriate to the end of protecting the public, and is manifestly adopted in good faith for that purpose. If a condition should be clearly arbitrary and capricious; if no reason with reference to the end in view could be assigned for it; and, especially, if it appeared that it must have been adopted for some other purpose — such, for instance, as to favor or benefit some person — it certainly would not be reasonable, and would be beyond the power of the legislature to impose. Parkes v. Bartlett, 236 Mich. 460, 210 N.W. 492, 47 A.L.R. 1128 (1926). Otherwise stated, the law would look with disfavor on any supplemental regulatory requirements that had as its effect the cutting of the pattern to fit the cloth. See City of Mobile v. Farrell, supra [229 Ala. 582, 158 So. 539]."
Crabtree v. City of Birmingham, supra.
This court has held on a number of occasions that both the production and distribution of milk is a business which vitally affects the public. State v. Dixie Dairies Corp., 268 Ala. 480,107 So.2d 896 (1959); Franklin v. State ex rel. Alabama StateMilk Control Board, supra.
Moreover, it is certain that included within the state's police power is the authority to fix prices. See Baxley v.Alabama Dairy Commission, supra; Nebbia v. New York,291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).
 B. Federal Constitution
Appellees' Federal Constitutional attack is apparently aimed at the price fixing provisions of the Act as being violative of the due process clause. This argument was advanced in Baxley
and rejected. There, the court noted, quoting Nebbia v. NewYork, supra, that if the law bears a "reasonable relation to a proper legislative purpose." and is "neither arbitrary nor discriminatory," it satisfies due process. Further, it was noted that price fixing, in particular, is unconstitutional "only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."
The appellees argue, however, that although price fixing may have once been necessary, as evidenced by the findings of fact made by the legislature in Tit. 22, § 205, Code, these findings are now irrelevant and antiquated, if not anachronistic.
Tit. 22, § 205, Code, states:
 "§ 205. Supervision and regulation of milk supply a proper function of state government. — It is hereby declared that milk is a necessary article of food for human consumption; that the production and maintenance of an adequate supply of healthful milk of proper chemical and physical content, free from contamination, is vital to the public health and welfare, and that the production, transportation, processing, storage, distribution and sale of milk, in the state of Alabama, is an industry affecting the public health and interest; and that unfair, unjust, destructive and demoralizing trade practices have been and are now being carried on in the production, marketing, sale, processing and the distribution of milk, which constitute a constant menace to the health and welfare of the inhabitants of this state and tends to undermine sanitary regulations and standards of content and purity, that health regulations alone are insufficient to safeguard the consuming public from future *Page 144 
inadequacy of a supply of this necessary commodity; that it is the policy of this state to promote, foster and encourage the intelligent production and orderly marketing of commodities necessary to its citizens, including milk, and to stabilize marketing of such commodities; that fluid milk is a perishable commodity easily contaminated with harmful bacteria, which cannot be stored for any great length of time, and which must be produced and distributed fresh daily, which supply cannot be regulated from day to day, but, due to natural and seasonal conditions fluctuates from day to day; that this surplus of milk, though necessary and unavoidable, unless regulated tends to undermine and destroy the fluid milk industry; that investigation and experience has shown that, due to the nature of milk and the conditions surrounding its production and marketing, that unless the producers, distributors and others engaged in the marketing of milk are guaranteed and insured a reasonable profit on milk, that both the supply and quality of milk are affected thereby to the detriment of and against the best interest of the citizens of this state whose health and well being are vitally affected thereby; that where no supervision and regulation is provided for the orderly marketing of milk, past experience has shown that in flush seasons of production, when surplus of milk is great and the price which producers and others are able to obtain for milk is below the cost of production, that ofttimes milk strikes invade the market followed by bombings and bloodshed, which ofttimes prevents the consuming public from receiving an adequate supply of pure and wholesome milk necessary for its health and well being; that, due to the nature of milk and the conditions surrounding its production and marketing that the natural law of supply and demand has been found inadequate to protect the industry in this and other states of the United States, and that, in the public interest, it is necessary to provide state supervision and regulations of the fluid milk industry of this state. The foregoing statement of facts, policy and application of this law are hereby declared a matter of legislative determination. (1939, p. 267.)"
While it may be relevant to note that strikes and bloodshed in the milk industry are no longer prevalent,[1] this largely misses the point as the Baxley court explained. In order to prevail on this point, appellees bear the "heavy burden of establishing the complete absence of any state of facts which the legislature might reasonably believe would redound to the public injury unless regulated." Baxley, supra. Appellees have failed to meet that burden, in our judgment.
 III. INTERSTATE COMMERCE
Appellant finally contends that the trial court erred in holding that the Alabama Dairy Commission Act, and the regulations passed pursuant thereto, work an unconstitutional burden on interstate commerce. We agree.
 ". . . Every state police statute necessarily will affect interstate commerce in some degree, but such a statute does not run counter to the grant of congressional power merely because it incidentally or indirectly involves or burdens interstate commerce. Milk Control Board of Pennsylvania v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752; Mintz v. Baldwin, 289 U.S. 346, 53 S.Ct. 611, 77 L.Ed. 1245; Asbell v. State of Kansas, 209 U.S. 251, 28 S.Ct. 485, 52 L.Ed. 778; Reid v. State of Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108."
James v. Todd, supra.
Appellees advance two contentions with regard to this issue. *Page 145 
First, they argue that the requirement that Alabama distributors purchase their needs from Alabama sources until such sources are exhausted prior to turning to out-of-state suppliers offends the commerce clause.
Second, they contend that even though retailers may purchase out-of-state milk at its source at a negotiated price, they must transport it back to this State at their own expense, and they argue this places an unconstitutional burden on interstate commerce.
Both these contentions were advanced in Baxley, and both were rejected. With regard to the first contention, the Baxley court noted that this requirement was lifted by Dairy Commission Order 2-72-1, and thus the court refused to pass on it. Dairy Commission Order 3-75-1 continues this policy. It was recently held not to be violative of the Commerce Clause by Judge Varner in Dairymen, Inc. et al. v. Alabama Dairy Commission et al., Civil Action No. 77-445-N (M.D.Ala. December 27, 1977). In that opinion, he made the following comments, which we think are pertinent here:
 "Plaintiffs' brief, at page 6, points out that `(T)he licensed Alabama processor is required to purchase all raw milk utilized for fluid milk sales through quota holders at the Class I price as fixed by defendant ADC. In contrast, the licensed out of state processor is free to purchase raw milk from nonquota holders at a negotiated price.' This effect of the regulation, while perhaps discriminating against instate distributors, is no bar to interstate commerce — in fact, it may be argued to encourage an increase of milk shipments into the State of Alabama."
With regard to the second contention, the Baxley court stated the following:
 "The restrictions complained of, however, are but the converse of those permitted in Eisenberg. In Eisenberg a state was allowed to set the price at which a distributor bought milk from instate producers, even though all the milk was being transported out of state. In the present case, the Attorney General would have this Court strike down, as a burden on interstate commerce, state regulations requiring out-of-state distributors and in-state retailers to sell at prices fixed by the Dairy Commission for all sales within the state. There appears to be no significant difference between the regulation permitted to stand in Eisenberg and the present regulatory scheme which the Attorney General would have this Court strike down. For that reason, Eisenberg should be deemed to be controlling, and the Attorney General's contention dismissed as without merit."
We agree with the Baxley court that Milk Control Board v.Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528,83 L.Ed. 752 (1939), is controlling, and therefore, these contentions must fail.
For the foregoing reasons, this cause is due to be reversed and remanded. In so holding, however, we think the following comments may be pertinent. First, we have not addressed all of appellant's contentions, as it was not necessary to do so in order to decide this case. Second, in reversing this cause, we have not re-instituted minimum price controls on the price of fluid milk.
REVERSED AND REMANDED.
All the Justices concur except JONES, J., not sitting.
[1] Revised and codified as 2-13-40, et seq., Code of 1975. This revision is not an issue on this appeal, since the cause below was tried under then applicable Tit. 22, § 205-231.
[1] In his dissent in Edmonson v. Brewer, 282 Ala. 581,213 So.2d 578 (1968), Mr. Justice Coleman observed, "It has been said that `Judges ought not to be ignorant in court of what everyone else knows and the judges themselves know out of court.'" It is therefore that we take note that there is a current movement for a nation-wide farm strike seeking 100 percent parity price supports for farm products.