INGRAM, Judge.
Waste Contractors, Inc. (WCI) instituted this action against Lauderdale County after the county commission revoked its prior approval of a site for a solid waste disposal facility proposed by WCI (the Greenbrier site). The complaint was subsequently amended to add a constitutional issue, of which the attorney general was properly notified. The state then joined in the proceeding. After the trial court granted summary judgment for the county and state, WCI timely perfected this appeal.
WCI challenges a portion of Alabama’s Solid Waste Disposal Act, § 22-27-1 et seq., Ala.Code 1975 (1984 Repl.Vol.), contending that § 22-27-5(b), which authorizes local governing bodies to “approve or disapprove disposal sites,” delegates that power to local authorities in an unconstitutional manner. WCI argues that legislation which delegates power to a county commission must contain substantive standards and procedural safeguards defining and limiting the exercise of such power and that the Solid Waste Disposal Act is standardless and boundless as to the approval or disapproval of sites. WCI also argues that the county’s exercise of its disapproval power over the Greenbrier site was improper. In addition, WCI contends that, while the Alabama Department of Environmental Management (ADEM) is authorized to promulgate regulations pertaining to the site of a sanitary landfill, the county is precluded from doing so.
WCI began searching for a site in Laud-erdale County for its proposed sanitary landfill in 1985. Four locations were considered, with the Greenbrier site being the one ultimately selected. The county itself had also considered that site for a landfill. *620 In April 1987, the county commission unanimously adopted a resolution authorizing WCI to establish and operate a sanitary landfill at the Greenbrier site, provided all of ADEM’s rules and regulations were met, and establishing an operational fee of $20,-000 or one percent of revenues. In May, the commission unanimously approved an extension of the site. Then, in June, without notice to WCI and without any discussion, the Commission voted to disapprove the Greenbrier site. At that point, WCI had expended approximately $80,000 in the purchase of option contracts on land and the examination and analysis of potential sites.
During the investigation of the Greenbrier site, WCI began discussions with ADEM regarding a permit to operate a landfill at that site. WCI filed its formal permit application with ADEM in July 1987, which it continues to actively pursue.
The disputed provision of the Solid Waste Disposal Act states as follows:
“(b) Private or corporate agencies.— Individuals, corporations, partnerships or other agencies engaging in the collection and disposal of solid wastes are subject to this article. Governing bodies may assign territories, approve or disapprove disposal sites, with the concurrence of the health department, and shall establish and collect annual license fees from such firms and set rate schedules if a service fee is charged. In addition to any other approvals which are necessary for any contract between private or corporate agencies and governmental entities for the disposal of solid wastes, approval of the department [ADEM] shall be obtained.” (Emphasis added.)
§ 22-27-5(b), Ala.Code 1975 (1984 Repl. Vol.).
The act further grants to ADEM regulatory power over all aspects of solid waste disposal.
“With regard to the disposal of solid wastes, the department [ADEM] shall exercise such regulatory control over the management of solid wastes as may be necessary to enforce the requirements of the department, and the department may adopt such rules and regulations as may be needed to meet the requirements of this article.” (Emphasis added.)
§ 22-27-7, Ala.Code 1975 (1984 Repl.Vol.).
ADEM has enacted comprehensive Solid Waste Management Regulations in order to exercise its regulatory control. Included therein are Solid Waste Disposal Siting Standards (§ 4-150) and requirements for notice and a public hearing on the merits of permit applications (§§ 4-182 and -183). The regulations do not, however, include guidelines to be applied by a county commission in approving or disapproving a site.
The Alabama legislature may delegate to counties and cities certain powers relating to local governments. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967).
“The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend.”
Alabama Dairy Commission v. Food Giant, Inc., 357 So.2d 139, 141 (Ala.1978), quoting Norton v. Lusk, 248 Ala. 110, 122, 26 So.2d 849, 859 (1946). We must then inquire whether the legislative authority has provided standards and safeguards along with the delegation of powers. Bailey v. Shelby County, 507 So.2d 438 (Ala.1987).
Section 22-27-5(b) essentially allows the counties in our state to have input regarding the location of waste disposal facilities within their boundaries; however, no standards to guide the local authorities or safeguards against arbitrary action are present anywhere within the Solid Waste Disposal Act.
The disputed portion of § 22-27-5(b) is similar to a provision in the Minus Act as originally drafted in 1981 (§ 22-30-5.1, Ala. Code 1975), which required a standardless legislative approval of any commercial hazardous waste treatment or disposal site if ADEM granted a permit to such facility. That provision was declared unconstitution *621 al by the United States District Court for the Middle District of Alabama in Browning-Ferris Industries of Alabama, Inc. v. Pegues, 710 F.Supp. 313 (M.D.Ala.1987). The case was then before the United States District Court for the second time. The trial judge had initially ruled that a determination regarding the validity of § 22-30-5.1 was not ripe for adjudication. The Eleventh Circuit reversed and remanded the case for consideration of the facial challenges to the Minus Act. Browning-Ferris Industries of Alabama, Inc. v. Alabama Department of Environmental Management, 799 F.2d 1473 (11th Cir.1986). In ruling on the merits of the case, the trial judge wrote as follows:
“The constitutional vice of the Minus Act is the complete absence of standards. There simply are no guidelines spelled out in the provision that the legislature must individually approve any facility devoted solely to the storage of hazardous waste. In other words, the statute does not provide the faintest clue as to what an applicant should do or refrain from doing in order to secure legislative approval. If one applicant for a license is preferred over another as the result of a political favor or for no logical reason at all, the disappointed applicant is without redress under the Minus Act because the discretion of the Legislature is standard-less and boundless.”
Browning-Ferris Industries of Alabama, Inc. v. Pegues, supra, at 4-5.
Thereafter, § 22-30-5.1 was amended in 1988 to include a designation of criteria to be evaluated in determining whether to recommend approval of proposed sites for the disposal or treatment of hazardous wastes. We believe that similar criteria should be formulated to guide local authorities in the exercise of the power granted to them in § 22-27-5(b), particularly the power to disapprove sites.
The case before us is illustrative of the problems created by such a standardless and boundless statute. A county’s approval of a site will ultimately be reviewed by ADEM to insure that a disposal facility is not injurious to the environment or citizenry of the area. On the other hand, nothing in the statute or ADEM’s regulations prevents the disapproval of a site in an arbitrary and capricious manner. Here, because of the arbitrary nature of the approval process, WCI expended large amounts of time and money locating a site for a sanitary landfill and received approval of the site from the county commission, only to suffer disapproval of the site shortly thereafter.
Not only does that kind of power adversely affect companies like WCI, but it has the potential for negative impact upon our state. Garbage and trash generated by our citizens must be disposed of somewhere, yet there are very few localities in which most of the citizens willingly accept the establishment of a landfill. The complex technical regulations and necessary equipment make waste disposal increasingly expensive, to the extent that it may no longer be practical or cost effective for disposal facilities to be located on a county-by-county basis.
Although the, county in which a solid waste disposal facility is to be located should have input into the decision as to its site, the extensive ADEM regulations relating to site selection are meaningless if the site determination is subject, in the final analysis, to the disapproval of a county commission with no standards, rules, or guidelines to determine the basis for its decision. Because the grant of power to local governing bodies to approve or disapprove sites that presently exists in § 22-27-5(b) is totally devoid of standards to regulate the exercise of that power, we find that portion of the Solid Waste Disposal Act to be unconstitutional.
We emphasize that not all of the powers granted to local authorities by § 22-27-5(b) are unconstitutional. It is the lack of standards and safeguards governing local approval or disapproval of waste disposal sites that makes the provision invalid.
We now turn to WCI’s claim that the action of the county at its June 1987 meeting violated procedural due process. The first element of due process requires “notice reasonably calculated, under all the *622 circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). “Proper notice is a jurisdictional prerequisite to valid agency action.” Dirt, Inc. v. Mobile County Commission, 739 F.2d 1562, 1566 (11th Cir.1984). There was a total failure of notice to WCI that the commission was to review its prior approval of the Green-brier site at the June meeting. “The second element of due process is the right to a hearing by an impartial tribunal.” Dirt, Inc., supra, at 1566. The commission disapproved the site without discussion, so there obviously was no hearing on that issue. WCI was deprived of both elements of due process, and the county commission was, therefore, without authority to take the action it did.
We note, even though not presented to us as an issue in this case, that the action of the commission at its April and May meetings was also taken without notice to or an opportunity to be heard by the citizens of the affected area.
We also must address the question of exactly what power is granted to local governing bodies by the Solid Waste Disposal Act. Clearly, ADEM was granted the authority in § 22-27-7 to adopt the rules and regulations necessary to carry out its responsibilities under the act. Giving administrative agencies the power to make rules and regulations is a proper delegation of the legislative power of the state. Bailey v. Shelby County, supra.
The county, on the other hand, is granted limited authority in § 22-27-5(b). It may (1) assign territories, (2) approve or disapprove disposal sites, with the concurrence of ADEM, and (3) establish and collect annual license fees.
Shortly before WCI filed its lawsuit in the instant case, the county adopted “License Requirements for Sanitary Landfills,” which contains siting standards and requirements for public hearings duplica-tive of ADEM’s. The county’s license requirements also call for an application fee of $10,000 and a licensing fee of $50,000 or one percent of revenues. In contrast, ADEM’s permit application fee is $1,500.
The county argues that its license requirements are not before this court. We disagree and will consider those requirements based on the rationale of Browning-Ferris Industries of Alabama, Inc. v. Alabama Department of Environmental Management, supra. The reversal of the trial court’s initial ruling was based primarily on “the hardship to the parties of withholding court consideration.” Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The Eleventh Circuit found that requiring Browning-Ferris to proceed with its permit application without knowing whether the Minus Act was valid would impose a substantial potential hardship on the company. Even though the county adopted its “License Requirements for Sanitary Landfills” after its approval-disapproval of WCI’s application, we think that these requirements must be tested here not only because they were adopted before suit was filed, but because they are viable matters which can have considerable effect on WCI’s pursuit of its application for site approval.
The county’s requirements are based upon the incorrect premise that it has the authority to “require licenses for disposal of solid wastes ... pursuant to Section 22-27-5(b).” Paragraph (a), p. 1, “License Requirements for Sanitary Landfills.” Counties are merely authorized to collect a license fee as compensation for any burden to the county that the operation of a solid waste facility entails. The county’s requirements also provide that a license “shall not be approved ... unless a permit for the sanitary landfill has been issued by [ADEM].” § 5, paragraph (a), p. 6, “License Requirements for Sanitary Landfills.” Under this provision, WCI and companies like it would be required to select a site that fulfills ADEM’s requirements and complete the permitting process before knowing whether they could obtain the county’s approval for the site. Disapproval of a site at that stage would inflict substantial economic harm upon such com *623 panies. In addition, the county’s $10,000 application fee, over six times greater than the permit fee required by ADEM, is at least arbitrary and capricious, if not prohibitive.
Our legislature has granted to ADEM the responsibility of developing and enforcing the regulation of solid waste disposal on a uniform basis throughout the state. An individual county cannot take upon itself the authority to regulate the environmental standards imposed upon a proposed site. The county’s license requirements clearly exceed the proper exercise of its statutory power.
In view of our holding that the standard-less grant of power to local authorities in § 22-27-5(b) to approve or disapprove disposal sites is unconstitutional, we find that the county’s June 1987 rescission of its contract with WCI is null and void.
The trial court’s judgment in this case is reversed, and the cause is remanded to' the trial court for any further proceedings consistent with this opinion.
In view of the foregoing, other issues raised by WCI are pretermitted.
REVERSED AND REMANDED.
BRADLEY, P.J., and HOLMES, J., concur.